[15 NE3d 1187, 992 NYS2d 178]

MORPHEUS CAPITAL ADVISORS LLC, Respondent, v UBS AG, Defendant, and UBS REAL ESTATE SECURITIES, INC., Appellant.

Argued May 6, 2014; decided June 10, 2014

## POINTS OF COUNSEL

*White & Case LLP*, New York City (*Kenneth A. Caruso* and *Patrick M. Wilson* of counsel), and *Herrick, Feinstein LLP* (*Jeffrey I. Wasserman* of counsel), for appellant. Morpheus Capital Advisors LLC has no cause of action for a Success Fee. (*Slattery v Cothran*, 210 App Div 581; *Gaillard Realty Co., Inc. v Rogers Wire Works, Inc.*, 215 App Div 326; *Werner v Eurich*, 263 App Div 744; *Levy v Isaacs*, 285 App Div 1170; *Barnet v Cannizzaro*, 3 AD2d 745; *Ackman v Toren, Inc.*, 6 AD2d 427, 6 NY2d 720; *Hammond, Kennedy & Co. v Servinational, Inc.*, 48 AD2d 394; *Solid Waste Inst. v Sanitary Disposal*, 120 AD2d 915; *Audrey*

*Balog Realty Corp. v East Coast Real Estate Devs.*, 202 AD2d 529; *Harvard Assoc. v Hayt, Hayt & Landau*, 264 AD2d 814.)

*Kornstein Veisz Wexler & Pollard, LLP*, New York City (*William B. Pollard, III*, and *Amy C. Gross* of counsel), for respondent. I. Morpheus Capital Advisors LLC has a valid claim for breach of its exclusivity rights because its agreement with UBS Real Estate Securities, Inc. created an exclusive right to sell. (*CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d 654; *Beal Sav. Bank v Sommer*, 8 NY3d 318; *Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352.) II. Parol evidence may be used to establish that the agreement between Morpheus Capital Advisors LLC and UBS Real Estate Securities, Inc. is an exclusive right to sell contract. (*Greenfield v Philles Records*, 98 NY2d 562; *Brandwein v Provident Mut. Life Ins. Co. of Phila*, 3 NY2d 491; *New York Auction Co. v United States Fid. & Guar. Co.*, 260 NY 186; *Schlenger v 310 Canal St. Corp.*, 272 App Div 761; *Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61; *Baird v Erie R.R. Co.*, 210 NY 225; *Kass v Kass*, 91 NY2d 554; *Evans v Famous Music Corp.*, 1 NY3d 452; *State of New York v Home Indem. Co.*, 66 NY2d 669; *Lopez v Consolidated Edison Co. of N.Y.*, 40 NY2d 605.) III. Exclusive agency does not foreclose Morpheus Capital Advisors LLC's breach of contract claims. (*Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685; *Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1; *Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley*, 71 NY2d 21; *Carnes Communications v Dello Russo*, 305 AD2d 332; *Solid Waste Inst. v Sanitary Disposal*, 120 AD2d 915; *Hammond, Kennedy & Co. v Servinational, Inc.*, 48 AD2d 394; *Matter of Clairol Dev., LLC v Village of Spencerport*, 100 AD3d 1546; *Shaw v Bluepers Family Billiards*, 94 AD3d 858; *Shia v McFarlane*, 46 AD3d 320.) IV. UBS Real Estate Securities, Inc.'s other arguments are unavailing. (*407 E. 61st Garage v Savoy Fifth Ave. Corp.*, 23 NY2d 275; *General Elec. Co. v Metals Resources Group*, 293 AD2d 417; *Warner v Kaplan*, 71 AD3d 1; *International Mins. & Chem. Corp. v Llano, Inc.*, 770 F2d 879; *Mawhinney v Millbrook Woolen Mills, Inc.*, 231 NY 290; *The Kronprinzessin Cecilie*, 244 US 12; *L. N. Jackson & Co. v Royal Norwegian Govt.*, 177 F2d 694.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

We are asked to decide in this appeal whether a financial brokerage agreement gave plaintiff broker the right to a

commission when defendant owner transferred certain distressed assets to a fund created by the Swiss National Bank as part of a 2008 bailout. We hold that the contract gave plaintiff a standard exclusive agency, not an exclusive right to sell the assets, and therefore no commission was due on the transaction at issue. Accordingly, the complaint should be dismissed.

## I

In September 2008, plaintiff Morpheus Capital Advisors LLC (Morpheus) entered into an agreement with defendant UBS Real Estate Securities, Inc. (UBSRE). The contract provided that Morpheus would serve as "financial advisor and investment banker in the proposed sale" of certain student loan assets owned by UBSRE. The assets had a face value of $510 million, though the parties agree that the economic climate at the time had devalued the assets considerably, rendering them "toxic."

In a section entitled "Scope of Engagement," the agreement set forth 10 services that Morpheus would provide during the contract term. These included identifying, introducing and assessing potential investors, negotiating terms, and providing advice regarding valuation of the assets and the development of "alternative transaction structures." In addition, UBSRE agreed that Morpheus "shall have the exclusive right to solicit counterparties for any potential Transaction involving the Student Loan Assets during the term of this Agreement." The contract would automatically expire, unless renewed, on December 31, 2008. The term "Transaction" was left undefined. However, in a provision dealing with Morpheus' commission—called a "Success Fee"—the contract defined a related term—"Transaction Amount"—as "the agreed value of the Student Loan Assets which are transferred or sold to a third party, or in respect to which the risk of first loss is assumed by a third party, in one or a series of transactions." Morpheus' Success Fee was to be calculated as a percentage of the Transaction Amount according to certain formulas. In addition, the contract required UBSRE to pay Morpheus a $150,000 signing fee and a retainer of $50,000 per month, neither of which is at issue here.

Finally, section five of the contract, entitled "Termination of Engagement—Exclusivity," provided as follows:

> "It is expressly agreed that following the expiration or termination of this Agreement, [Morpheus] will

continue to be entitled to receive fees as described above that have accrued prior to such expiration or termination but are unpaid. It is also expressly agreed that if [UBSRE] completes any Transaction with a party or parties ('Investor') (1) introduced to [UBSRE] by [Morpheus], (2) introduced to [UBSRE] by another party other than [Morpheus], but [Morpheus] performed substantially all the services set forth herein in Section 1 prior to the termination of this Agreement, then [Morpheus] shall be entitled to its full fees as described above, until March 31, 2009.''

In June 2009 Morpheus commenced this action against UBSRE and its parent company for breach of contract and breach of the covenant of good faith and fair dealing.[1] The complaint alleged that in mid-October 2008 UBSRE reached an agreement with the Swiss National Bank (SNB), Switzerland's central bank, to transfer up to $60 billion in illiquid assets to a special purpose vehicle called the Stabilization Fund. The SNB issued a press release explaining that the asset transfer would ''relieve[ ] [UBS] from all relevant remaining risks stemming from problem-ridden segments of credit markets.'' The complaint further alleged that in UBSRE's financial disclosures to shareholders for the first quarter of 2009, the company stated that it had transferred toxic student loan assets to the SNB fund valued at $39.1 billion in three transactions that occurred, respectively, in December 2008, March 2009 and on April 3, 2009. In late 2008 or early 2009, UBSRE informed Morpheus that the student loan assets that were the subject of their brokerage agreement were included in the deal with the Stabilization Fund. Thereafter, Morpheus demanded a commission of $2,887,500, claiming that the transfer to the SNB triggered UBSRE's duty to pay a Success Fee under the contract. UBSRE refused to pay and this action ensued.

After some initial discovery, UBSRE filed a pre-answer motion to dismiss pursuant to CPLR 3211 (a) (1) and (7). As relevant here, UBSRE contended that the purpose of the agreement was frustrated because the bailout from the SNB was an unforeseen event that excused UBSRE from performing on the contract. In the alternative, UBSRE argued that no breach had

---

**1.** Morpheus' dismissed claims against UBS AG, the parent company of UBSRE, are not at issue on this appeal.

occurred because Morpheus had an exclusive agency, not an exclusive right to sell the assets. Therefore, defendant said, Morpheus was only entitled to a commission if Morpheus introduced UBSRE to the buyer or if UBSRE effectuated a transaction using a competing broker; because the bailout did not fall into either of these scenarios, no commission was due.

Morpheus opposed the motion, arguing that the documentary evidence was insufficient to establish entitlement to dismissal as a matter of law. Specifically, Morpheus contended that there were factual disputes regarding the nature of the transfer to the Stabilization Fund as well as the availability of the defenses of frustration of purpose and impossibility. Morpheus also argued that the plain language of the agreement entitled Morpheus to collect a Success Fee upon the closing of any transaction involving the student loan assets within the applicable time period, a right that was not contingent on Morpheus introducing UBSRE to a buyer. In the event the court found the agreement ambiguous on this point, Morpheus submitted parol evidence in the form of emails between the parties and earlier drafts of the agreement in an attempt to demonstrate that the parties had intended to establish an exclusive right to sell.

Supreme Court granted the motion to dismiss on the ground that the 2008 financial crisis and the bailout by the SNB "constituted an unforeseeable event which undermined the basic assumption and purpose of the [agreement], i.e., the introduction of UBSRE by Morpheus to a third party buyer" (*Morpheus Capital Advisors LLC v UBS AG*, 2011 NY Slip Op 34096[U], *7 [Sup Ct, NY County 2011]).

The Appellate Division reversed, with one Justice dissenting, and, insofar as relevant here, reinstated the complaint as against UBSRE (105 AD3d 145 [1st Dept 2013]). The majority held that UBSRE had not established its frustration of purpose defense because the documentary evidence failed to conclusively show that the creation of the Stabilization Fund, rather than UBSRE's "decision to avail [itself] of it, rendered plaintiff's performance under the agreement . . . 'virtually worthless' " (*id.* at 149 [citation omitted]). With regard to the rights conferred by the contract, the majority and the dissent agreed that "the agreement only confers an exclusive agency to plaintiff insofar as it does not expressly prohibit UBSRE from finding a buyer for its toxic assets and thereafter engaging in a self-brokered sales transaction" (*id.* at 150). However, the majority nevertheless determined that Morpheus had pleaded a cause of action

for breach of contract because "the agreement required UBSRE to give plaintiff the opportunity to solicit a counterparty prior to transferring its assets into the Fund" (*id*. at 150-151). In the majority's view, plaintiff's allegations that UBSRE failed to afford Morpheus such an opportunity were sufficient to assert a cause of action for breach of contract.

By contrast, the dissent would have affirmed on the ground that the contract conferred on Morpheus an exclusive agency, not an exclusive right to sell. Therefore, Morpheus' concession that "the subject property was transferred without the intervention of any broker" made it "unnecessary to reach the issue of whether the purpose of the brokerage agreement was frustrated" (*id*. at 154-155 [Tom, J., dissenting]). Moreover, the dissent disagreed with the majority's conclusion that the contract's plain terms imposed on UBSRE a duty to wait before transferring the assets. The majority's interpretation, the dissent reasoned, "[e]ngrafted onto the parties' agreement . . . an ill-defined right akin to an augmented right of first refusal in favor of a counterparty yet to be located by [Morpheus]" (*id*. at 161). The dissent felt that "such a right cannot be left to implication but must, of necessity, be incorporated into an express agreement" (*id*. [citations omitted]). The Appellate Division granted leave to appeal to this Court on the certified question of whether the order below was properly made. We now reverse and answer in the negative.

## II

■ The distinction between an exclusive agency and an exclusive right to sell is well established in a body of Appellate Division case law (*see e.g. Far Realty Assoc. Inc. v RKO Del. Corp.*, 34 AD3d 261, 262 [1st Dept 2006]; *Harvard Assoc. v Hayt, Hayt & Landau*, 264 AD2d 814, 815 [2d Dept 1999]; *Solid Waste Inst. v Sanitary Disposal*, 120 AD2d 915, 916 [3d Dept 1986]; *Hammond, Kennedy & Co. v Servinational, Inc.*, 48 AD2d 394, 397 [1st Dept 1975]; *Levy v Isaacs*, 285 App Div 1170, 1170-1171 [2d Dept 1955], *decision amended* 286 App Div 855 [2d Dept 1955]; *Werner v Eurich*, 263 App Div 744, 744 [2d Dept 1941]; *Slattery v Cothran*, 210 App Div 581 [4th Dept 1924]). As stated nearly a century ago,

"The general rule is that where an exclusive right of sale is given a broker, the principal cannot make a sale [herself] without becoming liable for the commissions. But where the contract is merely to make

the broker the sole agent, the principal may make a sale [herself] without the broker's aid, if such sale is made in good faith and to some purchaser not procured by the broker" (*Slattery*, 210 App Div at 583 [citations omitted]).

Put differently, "[a] broker is entitled to a commission upon the sale of the property by the owner only where the broker has been given the exclusive right to sell; an exclusive agency merely precludes the owner from retaining another broker in the making of the sale" (*Far Realty*, 34 AD3d at 262). We have endorsed this dichotomy implicitly in the past (*see Ackman v Toren, Inc.*, 6 NY2d 720 [1959], *affg* 6 AD2d 427 [1st Dept 1958]; *McClave v Paine*, 49 NY 561, 561 [1872]; *Moses v Bierling*, 31 NY 462, 462 [1865]), and now do so explicitly.

Furthermore, we agree with the case law of the lower courts holding that a contract giving rise to an exclusive right of sale must "clearly and expressly provide[ ] that a commission [is] due upon sale by the owner or exclude[ ] the owner from independently negotiating a sale" (*Solid Waste*, 120 AD2d at 916; *see also e.g. Far Realty*, 34 AD3d at 262).[2] Requiring an affirmative and unequivocal statement to establish a broker's exclusive right to sell is consistent with the general principle that an owner's freedom to dispose of her own property should not be infringed upon by mere implication.

Conceding that the contract here lacks a provision expressly conferring an exclusive right of sale, Morpheus argues that no magic words are necessary; instead, Morpheus urges us to examine the contract as a whole to deduce the parties' intent to create an exclusive right to sell or, if the agreement is ambiguous, to examine parol evidence. We decline these invitations in favor of a rule that, "[w]ithout an unequivocal expression of intent by its own terms or by necessary implication from its terms, the . . . contract is at most considered to create an exclusive agency, not excluding the owner's inherent right to sell his or her own property" (11 NY Jur 2d, Brokers § 169).

---

**2.** For example, the agreement here does not contain language providing that a Success Fee is payable "regardless of whether [the broker] has actually procured the Purchase Agreement" (*see Audrey Balog Realty Corp. v East Coast Real Estate Devs.*, 202 AD2d 529, 530 [2d Dept 1994] [holding that broker had exclusive right to sell]), or that UBSRE "will proceed only through [the broker] and will not directly or through others negotiate the sale" (*Hammond, Kennedy*, 48 AD2d at 396 [same]). Nor does the contract require that UBSRE "refer all inquiries or offers" to Morpheus for negotiation (*see Audrey Balog*, 202 AD2d at 530).

Nor are we persuaded by Morpheus' argument that a rule requiring a clear statement in order to confer an exclusive right of sale should apply only to real estate brokerage agreements. While it is true that much of the relevant Appellate Division case law arises in the context of the lease or sale of real property, we see no reason to apply a different rule to brokerage contracts concerning the sale of financial instruments in the investment banking context. In both cases, the governing principles arise from the law of agency and contract, not from the law of real property. Accordingly, in both cases the owner must expressly agree to forfeit the right to directly convey its own property to a third party without incurring a broker's fee.

Having concluded that the contract gave Morpheus an exclusive agency, and not an exclusive right to sell the student loan assets, the remaining issue is whether the complaint nevertheless states a claim for breach of contract. The Appellate Division concluded that it did based on the provision giving Morpheus the "exclusive right to solicit counterparties for *any . . . Transaction*" (emphasis added). The plain meaning of this language, in the majority's view, was that "the agreement required UBSRE to give plaintiff the opportunity to solicit a counterparty prior to transferring its assets into the Fund" (105 AD3d at 150-151).

■ That interpretation is flawed for several reasons. First, the court ascribed too much weight to the language giving Morpheus the exclusive right to solicit counterparties for "any . . . [t]ransaction." This language does not lead to the conclusion that UBSRE had a corollary duty to give Morpheus a chance to seek a buyer before UBSRE consummated an independent sale. Section five of the agreement illustrates that Morpheus' entitlement to a commission was contingent on Morpheus introducing an investor to UBSRE or another broker facilitating such an introduction. Moreover, the consequence of the purported "duty to wait" would fundamentally change the nature of the exclusive agency, wherein the owner and broker are essentially in competition with one another to locate a buyer (*see e.g.* Restatement [Second] of Agency § 449, Comment *c* ["A contract to give an 'exclusive agency' to deal with specified property is ordinarily interpreted as not precluding competition by the principal personally but only as precluding him from appointing another agent to accomplish the (same) result"]). Indeed, Morpheus asserts that UBSRE was required to delay the transfer to the Stabilization Fund until the contract expired at the end of 2008

to see whether Morpheus could solicit a better offer. But as the dissent below rightfully recognized, this interpretation "transform[s] a contract that expressly confers the exclusive right to deal . . . into one that confers the exclusive right to sell" (105 AD3d at 154 [Tom, J., dissenting]). Furthermore, from a practical standpoint, a duty to wait would have been an absurd contractual term given the rapidly evolving landscape of the business world during the difficult economic time when the parties entered into the agreement. In short, in the absence of language expressly varying the parties' rights under an exclusive agency, UBSRE had no duty to wait.

Finally, contrary to plaintiff's contention, it is unnecessary to conduct further discovery to shed light on the details of the bailout that included the Swiss government's assumption of the distressed student loan assets. It is inconsequential whether UBSRE was legally compelled to participate in the bailout or whether the Stabilization Fund is technically a separate entity from the SNB. The transfer was neither the work of a competing broker nor the result of the type of third-party introduction contemplated by section five of the agreement. Therefore, the bailout did not trigger defendant's obligation to pay Morpheus a Success Fee.

## III

In sum, plaintiff's causes of action are conclusively contradicted by the language of the parties' contract, mandating dismissal of the complaint. Accordingly, the order of the Appellate Division should be reversed, with costs, the motion of defendant UBS Real Estate Securities, Inc. to dismiss the complaint as against it granted, and the certified question answered in the negative.

PIGOTT, J. (dissenting). The language used in this agreement could reasonably be interpreted to indicate that the parties intended Morpheus to have an exclusive right to sell the student loan assets during the relevant contract period. For this reason, I dissent.

The majority holds as a matter of law that the agreement in dispute gave Morpheus only a "standard exclusive agency," not an "exclusive right to sell" certain student loan assets (*see* majority op at 531). In holding so, the majority sets forth a rule that has not yet been uniformly applied in cases involving investment banking contracts; that an "affirmative and unequivocal

statement" must be made to establish an exclusive right to sell the assets (*id.* at 535). Rather, this rule was established in Appellate Division cases involving brokerage real estate agreements.

Reading this agreement most favorably to Morpheus, which we must on this CPLR 3211 motion, questions of fact exist as to whether the parties intended Morpheus to have an exclusive right to sell. The agreement gave Morpheus the "exclusive right to solicit counterparties for any potential Transaction involving the Student Loan Assets during the term of this Agreement." The agreement also provided that Morpheus "shall receive a Success Fee payable upon the closing of" any transaction involving the sale, transfer, or transfer of risk of first loss of the student loan assets.

Further, the parties negotiated a contractual provision that relieves UBS Real Estate Securities (UBSRE) of the obligation to pay Morpheus if it or its affiliates completed a certain type of deal with two particular entities, Morgan Stanley or NBF International. This limited exception of UBSRE's obligation to pay Morpheus for a transaction that it and/or its affiliates initiated would be unnecessary if UBSRE could dispose of the student loan assets without liability to Morpheus in a self-directed transaction. Another provision permits UBSRE to jointly market the assets with Morpheus "taking the lead." This provision, like the Morgan Stanley/NBF International carve out, also would be unnecessary if UBSRE had, as it claims, an unfettered right to sell the student loan assets without obligation to Morpheus on the theory that Morpheus only had an exclusive agency right.

Judges GRAFFEO, READ and RIVERA concur with Chief Judge LIPPMAN; Judge PIGOTT dissents in an opinion; Judges SMITH and ABDUS-SALAAM taking no part.

Order reversed, with costs, motion of defendant UBS Real Estate Securities to dismiss the complaint as against it granted, and certified question answered in the negative.