CWCapital Invs. LLC v CWCapital Cobalt VR Ltd. (2020 NY Slip Op 02240)





CWCapital Invs. LLC v CWCapital Cobalt VR Ltd.


2020 NY Slip Op 02240


Decided on April 9, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 9, 2020

Friedman, J.P., Richter, Webber, Singh, JJ.


11110 652092/18

[*1] CWCapital Investments LLC, et al., Plaintiffs-Respondents,
v
CWCapital Cobalt VR Ltd., et al., Defendants-Appellants, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Defendants.


Quinn Emanuel Urquhart & Sullivan, LLP, New York (Jonathan E. Pickhardt of counsel), for CWCapital Cobalt Vr Ltd. and Carbolic LLC, appellants.
Ganfer Shore Leeds & Zauderer LLP, New York (Mark C. Zauderer of counsel), for CWCapital Cobalt Vr Ltd., appellant.
Latham & Watkins LLP, New York (Sandeep Savla of counsel), for Och-Ziff Capital Management Group LLC, Och-Ziff Holding Corporation, OZ Management LP, OZ Master Fund, Ltd., OZ Enhanced Master Fund, Ltd., Oz Credit Opportunities Master Fund, Ltd, OZ GC Opportunities Master Fund, Ltd., and OZSC, L.P., appellants.
Venable LLP, New York (Gregory A. Cross of counsel), for respondents.



Order, Supreme Court, New York County (Andrea Masley, J.), entered September 25, 2019, which, insofar as appealed from as limited by the briefs, denied defendants' motions to dismiss the amended complaint, unanimously modified, on the law, to grant the motion of defendants CWCapital Cobalt VR Ltd. and Carbolic, LLC with respect to the fifth cause of action as against Carbolic, LLC and the second cause of action to the extent it alleges that CWCapital Cobalt VR Ltd. breached section 7.09 of the indenture, and to grant the remaining defendants' motion to dismiss the amended complaint in its entirety as against them, and otherwise affirmed, without costs.
This action involves a 2007 collateralized debt obligation (CDO) in which various classes of notes were issued by defendant CWCapital Cobalt VR Ltd. (Cobalt). The transaction is governed by an indenture and a collateral management agreement (CMA). Under the CMA, plaintiff CWCapital Investments LLC (CWCI) was named as collateral manager and appointed as Cobalt's "exclusive agent" to provide Cobalt with certain services, including exercising the right to appoint or act as the controlling class representative or directing holder (together the CCR). CWCI exercised that right by appointing itself as the CCR, and has served in that role since the 2007 inception of the CDO.
During the course of the CDO, the notes were transferred several times. As relevant here, in August 2016, pursuant to five separate sale agreements, former defendant Merrill Lynch, Pierce, Fenner and Smith Incorporated sold certain notes to defendants OZ Master Fund, Ltd., OZ Enhanced Master Fund, Ltd., OZ Credit Opportunities Master Fund, Ltd., OZ GC Opportunities Master Fund, Ltd. and OZSC, L.P. (collectively the OZ Funds). In section 5(a) of the sale agreements, the OZ Funds promised not to aid in the removal of the collateral manager, and in section 4, they represented that they were in compliance with all applicable laws, including the Foreign Corrupt Practices Act (FCPA). Plaintiff Galaxy Acquisition LLC (Galaxy), CWCI's parent, which purportedly had the power to veto any transfer of the notes, [*2]approved the sales.
Shortly thereafter, the OZ Funds transferred the notes to defendant Carbolic, LLC. In connection with that transaction, Carbolic wrote five letters to Galaxy (the letter agreements) in which it made the same promises that the OZ Funds had made in sections 5(a)(1)(A) and 5(a)(1)(B) of the sale agreements.
In April 2018, Cobalt sent notice letters designating Carbolic as the new CCR. CWCI and Galaxy then commenced this action alleging that in replacing CWCI with Cobalt as the CCR, the various defendants breached the indenture, the CMA, the sale agreements and the letter agreements, and engaged in tortious conduct. They also alleged breach of contract and fraud in connection with the sale of the notes to the OZ Funds. By separate motions, Cobalt and Carbolic, and the OZ Funds and the OZ Management defendants [FN1], moved to dismiss the amended complaint. In January 2019, after the motions were briefed but before the motion court's decision, Cobalt withdrew its appointment of Carbolic as the CCR. It is undisputed that Carbolic never took over as the CCR, and that CWCI has always retained that role. As relevant to the issues on appeal, after supplemental briefing, the motion court denied the motions [FN2]. Defendants now appeal.
The second cause of action alleges that Cobalt breached both the CMA and the indenture by appointing Carbolic as the new CCR. With respect to the CMA, plaintiffs maintain that because section 1 of that agreement names CWCI as Cobalt's "exclusive agent" for purposes of appointing the CCR, Cobalt gave up any right it may have had to do so itself. Citing Morpheus Capital Advisors LLC v UBS AG (23 NY3d 528 [2014]), Cobalt argues that despite the exclusive agency provided for in the CMA, it nevertheless retained the right to appoint the CCR. Whether or not Morpheus is applicable, Cobalt's argument fails because it lost any right it may have had to appoint the CCR. In the indenture, Cobalt "assign[ed], transfer[red], convey[ed] and set over to the Trustee . . . all of [its] estate, right, title and interest in, to and under the [CMA]." Although the Trustee gave Cobalt "a license to exercise all of [its] rights pursuant to the [CMA]," that license was "automatically revoked upon the occurrence of an Event of Default." On June 30, 2017, the Trustee gave notice of an Event of Default. Thus, Cobalt's license was revoked before it sent the April 2018 notices appointing Carbolic as the new CCR.[FN3]
Plaintiffs have also stated a claim that Cobalt breached sections 7.11(b) and 7.16 of the indenture. Section 7.11(b) states Cobalt agrees not to "engage in any business with respect to . . . the Collateral except as expressly permitted or required by this Indenture and the [CMA]." Section 7.16 provides that "[Cobalt] agrees to . . . refrain from performing any actions prohibited under[] the [CMA]." Since plaintiffs sufficiently allege that Cobalt's actions are prohibited by the CMA's "exclusive agent" provision, they have also alleged a breach of sections 7.11(b) and [*3]7.16. However, we agree with Cobalt that plaintiffs have failed to allege a breach of section 7.09(b) of the indenture, which prohibits Cobalt from "contract[ing] with other Persons . . . for the performance of actions or obligations to be performed by [Cobalt]" under the indenture. Because Cobalt has no obligation under the indenture to perform the role of CCR, its appointment of Carbolic to that role does not violate section 7.09(b).
In the third cause of action, plaintiffs allege that the OZ Funds breached the sale agreements by appointing Carbolic as the CCR thereby removing CWCI from that role. The fifth cause of action alleges that Carbolic and the OZ Funds breached the letter agreements by that same conduct. In Section 5(a)(i)(A) of the sale agreements, the OZ Funds promised not to "direct, or join or acquiesce in . . . any direction, to terminate or remove [CWIC] (the ". . . Collateral Manager") under the related [CMA]." In Section 5(a)(i)(B), they agreed not to "consent to or approve of any amendment to the [indenture] that would . . . reduce the rights of the . . . Collateral Manager." In the letter agreements, Carbolic made the same promises.
The motion court should have dismissed these claims since the documentary evidence establishes that no breach occurred. Section 5(a)(i)(A), and the mirror provision in the letter agreements, only prohibit acts related to removal of CWCI as collateral manager. It is undisputed that CWCI was never removed as collateral manager. Indeed, the notice letters appointing Carbolic as the new CCR say nothing about CWCI's role as collateral manager, much less purport to remove CWCI from that role.
We find unavailing plaintiffs' argument that appointing Carbolic as the CCR is the same as directly removing CWCI as collateral manager because the only substantive duty of the collateral manager is to serve as or appoint the CCR. The offering memorandum attached to the amended complaint shows that the role of the CCR is separate and distinct from the function of the collateral manager. Further, the CMA itself lists a host of services that the collateral manager must provide, separate and apart from those related to the CCR.
Likewise, there was no breach of Section 5(a)(i)(B) and the parallel language in the letter agreements. Those sections prohibit the consent to, or approval of, an amendment to the indenture that would reduce CWCI's rights as collateral manager. The notice letters do not mention any amendment to the indenture, let alone one that would reduce CWCI's rights. Nor have plaintiffs alleged that any amendment to the indenture actually was made or attempted.
Because the documentary evidence, namely the unambiguous contracts and the notice letters, shows that the OZ Funds and Carbolic did not engage in conduct prohibited by the contracts, the third and fifth causes of action should be dismissed (see Madison Equities, LLC v Serbian Orthodox Cathedral of St. Sava, 144 AD3d 431, 431 [1st Dept 2016] [affirming dismissal on documentary evidence because the language of the contract "simply does not say what [the] plaintiff claims it says"]; MBIA Ins. Corp. v Merrill Lynch, 81 AD3d 419, 420 [1st Dept 2011] ["The breach of contract cause of action fails to state a (claim) for breach of the promise to provide subordination protection since there is no such promise in the relevant agreements"]).[FN4]
The fourth cause of action alleges that the OZ Funds and OZ Management breached section 4 of the sale agreements by falsely representing that the OZ Funds were in compliance with the FCPA. Plaintiffs lack standing to assert this claim because they are neither parties to the sale agreements nor third-party beneficiaries with respect to section 4. A nonparty can asset a breach of contract claim "only if it is an intended, and not a mere incidental, beneficiary, and even then, even if not mentioned as a party to the contract, the parties' intent to benefit the third party must be apparent from the face of the contract" (LaSalle Natl. Bank v Ernst & Young, 285 [*4]AD2d 101, 108 [1st Dept 2001] [internal citation omitted]). Thus, "[a]bsent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to construe such an intent" (id. at 108-109).
Here, the contractual language does not establish that the parties intended to benefit plaintiffs with respect to section 4. The representation that the OZ Funds were in compliance with the FCPA was made only to the seller of the notes, Merrill Lynch, not to plaintiffs. That section further provides that only Merrill Lynch, not plaintiffs, was relying on the truthfulness of the representation. Notably, in section 5 of the agreements, the parties agreed that plaintiffs are "express third party beneficiar[ies] . . . under this Section 5" (emphasis added). Thus, the omission of a similar clause in section 4 reflects the parties' intent to exclude plaintiffs as third-party beneficiaries under that section (see Matter of New York City Asbestos Litig., 41 AD3d 299, 302 [1st Dept 2007] ["the expression of one thing implies the exclusion of the other"]; see also Dormitory Auth. of the State of N.Y. v Samson Constr. Co., 30 NY3d 704, 707-708, 710 [2018]). Thus, the fourth cause of action should be dismissed.
In the sixth cause of action, plaintiffs allege that OZ Management tortiously interfered with and caused Cobalt to breach the CMA and the indenture. The seventh and eighth causes of action allege that OZ Management fraudulently induced Galaxy to consent to the sale of notes from Merrill Lynch to the OZ Funds.
These claims fail for lack of damages, a required element of both torts (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 144 [2017] ["actual harm is an element of fraudulent inducement"]; AREP Fifty-Seventh, LLC v. PMGP Assoc., L.P., 115 AD3d 402 [1st Dept 2014] [tortious interference requires a showing of damages]). Although a plaintiff is not obligated to show, on a motion to dismiss, that it actually sustained damages, it must plead "allegations from which damages attributable to [defendant's conduct] might be reasonably inferred" (InKine Pharm. Co. v Coleman, 305 AD2d 151, 152 [1st Dept 2003][internal quotation marks omitted]).
Here, plaintiffs have failed to do so. They do not explain how they sustained damages as a result of Cobalt's designation of Carbolic as the new CCR. It is undisputed that the notice letters appointing Carbolic as the CCR were never given effect, the appointment of Carbolic was withdrawn, and CWCI continued operating as the CCR. Nor have plaintiffs shown how they were injured by the allegedly false representations about compliance with the FCPA. Because cognizable damages cannot be reasonably inferred, the sixth, seventh and eighth causes of action should be dismissed (see Arts4All, Ltd. v Hancock, 5 AD3d 106, 110 [1st Dept 2004]).
The only specific harm that plaintiffs point to is that they were allegedly forced to engage in "costly litigation." However, it is well settled that "attorneys' fees . . . are not recoverable unless authorized by statute, court rule, or written agreement of the parties" (Reif v Nagy, 175 AD3d 107, 131 [1st Dept 2019]). Plaintiffs identify no such statute, court rule or agreement. The "narrow exception" involving litigation with a third party (Hunt v Sharp, 85 NY2d 883, 885 [1995]) does not apply here. Cobalt is plaintiffs' present adversary, and it was also CWCI's adversary in the other litigations (see id. [attorneys' fees unavailable "where . . . the purported third-party' wrongdoer is, either legally or as a practical matter, the same as the claimant's opponent in the main action"]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 9, 2020
CLERK



Footnotes

Footnote 1: Och-Ziff Capital Management Group LLC, OZ Management L.P. and Och-Ziff Holding Corporation (collectively OZ Management).

Footnote 2: The motion court dismissed a declaratory judgment claim against Cobalt and Carbolic, and one of Galaxy's contract claims against Cobalt. Plaintiffs do not cross-appeal from these dismissals. 

Footnote 3: In its reply brief, Cobalt contends that the expiration of its license is irrelevant because its right to appoint the CCR is not derived from the CMA but rather from certain rights it purportedly obtained through its alleged ownership of the transaction bonds. However, in its opening brief, Cobalt made the contradictory argument that it was in fact relying upon its status as the principal under the CMA. We decline to consider Cobalt's argument, first raised in reply, which is inconsistent with the argument in its main brief (see Herman v Herman, 162 AD3d 459, 461 [1st Dept 2018], lv denied 32 NY3d 915 [2019]).

Footnote 4: In addition, the fifth cause of action is not proper as to the OZ Funds because they are not parties to the letter agreements (see e.g. Randall's Is. Aquatic Leisure, LLC v City of New York, 92 AD3d 463, 463 [1st Dept 2012], lv denied 19 NY3d 804 [2012] ["There can be no breach of contract claim against a non-signatory to the contract"]).