Silvergrove Advisors, LLC v Crosswing Holdings LLC (2021 NY Slip Op 05109)





Silvergrove Advisors, LLC v Crosswing Holdings LLC


2021 NY Slip Op 05109


Decided on September 28, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 28, 2021

Before: Webber, J.P., Mazzarelli, González, Scarpulla, Pitt, JJ. 


Index No. 656061/17 Appeal No. 14198 Case No. 2020-03836 

[*1]Silvergrove Advisors, LLC, Plaintiff-Appellant,
v
Crosswing Holdings LLC, et al., Defendants-Respondents.


Feuerstein Kulick, LLP, New York (David Feuerstein of counsel), for appellant.
The Ginzburg Law Firm, P.C., Fresh Meadows (Daniel Ginzburg of counsel), for respondents.



Order, Supreme Court, New York County (Robert R. Reed, J.), entered August 12, 2020, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for summary judgment, unanimously affirmed, with costs.
In January 2017, defendant Crosswing Holdings LLC retained plaintiff Silvergrove Advisors LLC (Silvergrove) to assist it in securing financing, which ultimately resulted in the acquisition of Crosswing by defendant Superior Crosslink Investments, L.P. (the Superior Transaction). Silvergrove brought this action in October 2017 to recover amounts allegedly owed in success fees for the Superior Transaction under the parties' Engagement Letter.
The motion court properly denied Silvergrove's summary judgment motion, as there remain disputed issues of fact with respect to each of the success fees that Silvergrove claims to be owed. First, Silvergrove maintains that it is entitled to a success fee because the individual defendant principal stockholders' rollover equity in the company following the Superior Transaction was unambiguously "Consideration" under the parties' Engagement Letter. However, the parties' agreement was ambiguous in this regard, providing that Silvergrove would be entitled to a success fee for the retention of "assets" by the "Client and its principal stockholders," while it would only be entitled to a success fee for the value of "equity" retained by the "Client" (South Rd. Assoc. LLC v International Bus. Machs. Corp., 4 NY3d 272, 277 [2005]). Thus, the plain language of the parties' agreement renders it ambiguous, given that "the specific mention of one thing [in the contract] implies the exclusion of others" (UMG Recs., Inc. v Escape Media Group, Inc., 107 AD3d 51, 59 [1st Dept 2013]).
Silvergrove also contends that it is entitled to a success fee for an interim bridge loan that it did not obtain for Crosswing. Defendants contend that they asked Silvergrove's CEO, Brian Moloney, to obtain the interim bridge loan, but that he declined because he did not handle that type of debt and because the amount of the proposed transaction was too small. Moloney disputes that the conversation ever took place. Silvergrove also submits that it is entitled to a success fee despite having not been involved in the transaction. However, the contractual language plainly states that Silvergrove was not given an exclusive right of sale, but was simply made defendants' exclusive broker (Morpheus Capital Advisors LLC v UBS AG, 23 NY3d 528 [2014]).
There also remain disputed factual issues concerning whether Silvergrove is entitled to an additional success fee for the line of credit made available to Crosswing in connection with the Superior Transaction. Whether Silvergrove "obtained" the credit facility for defendants cannot be resolved as a matter of law, given that: Provident had a pre-existing credit line with Provident Bank; Provident Bank referred to the additional credit it was extending to Crosswing as an "Amended [*2]and Restated Revolving" credit line, and the Revolving Credit Note specifically stating that it was "not a novation." There is also a fact issue as to whether Silvergrove is "double dipping" by attempting to be compensated for both sides of the Superior Transaction.
Plaintiff contends that it is entitled to other success fees from defendants, including for excluding an entity known as AMF Nano from the Superior Transaction because it was a subsidiary of AmNet, and thus an "asset" retained by defendants. Defendants contend that AMF Nano was never a subsidiary of AmNet. We have considered these arguments and each of plaintiff's other claims for additional success fees, and find that they remain disputed factual issues that require affirmance of the court's order.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 28, 2021