Spielberger v Brown Harris Stevens Residential Sales, LLC (2025 NY Slip Op 50252(U))

[*1]

Spielberger v Brown Harris Stevens Residential Sales, LLC

2025 NY Slip Op 50252(U)

Decided on January 13, 2025

Civil Court Of The City Of New York, New York County

Li, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 13, 2025
Civil Court of the City of New York, New York County

Spielberger, Plaintiff,

against
Brown Harris Stevens Residential Sales, LLC, Defendant.

Index No. CV-011985-22/NY

Plaintiff's counsel: Pro se
Defendant: 
Law Offices of Andrew P. Saulitis P.C.
40 Wall Street 37th Floor
New York, NY 10005

Wendy Changyong Li, J.

I. Background
On September 22, 2022, Plaintiff, a real estate broker, commenced the instant action against Defendant, a real estate service company, for money damages in the amount of $50,000 with interest for Defendant's alleged failure to pay Plaintiff her share of real estate broker commission. Defendant joined the action by filing an Answer. On November 26, 2024, the matter proceeded to a bench trial, where Plaintiff appeared pro se, and Defendant was represented by counsel.
Plaintiff submitted five exhibits, marked as Plaintiff's Exhibits I-V. Defendant submitted one exhibit, marked as Defendant's Exhibit A. The authenticity or the completeness of the content of the evidence were not disputed during the trial. The exhibits were admitted into evidence.
Plaintiff testified that she was a licensed commercial real estate broker, who was engaged by Hassan ("Hassan") in December 2021 to find a rental property for his store, Smoke City NYC ("Tenant"). Plaintiff presented a copy of Plaintiff's current broker license with the expiration date of May 20, 2025. Plaintiff did not provide a copy of the broker license for the approximate period of 2021-2023. Plaintiff testified that broker licenses were subject to renewal once every two years.
Plaintiff testified that an exclusive brokerage agreement ("Brokerage Agreement") was [*2]entered into by Plaintiff and Hassan in January 2022. The email communications between Plaintiff and Hassan, from December 24, 2021 to January 11, 2022, and a copy of a signed Brokerage Agreement bearing two dates, "Jan 27, 2022" and "Jan 12, 2022" were submitted to support Plaintiff's case (Plaintiff's Exhibit I). The Brokerage Agreement was signed electronically by Hassan and physically by Plaintiff. The agreement stated, in relevant part, "[w]e hereby grant Spielberger (broker) the exclusive right to find, negotiate for and secure space for lease, sublease, renewal, extension or purchase by us, our affiliates, individually or designees, and we agree to lease . . . such space or property solely and exclusively through Spielberger" (id.). According to Plaintiff, the reason why the Brokerage Agreement made no reference to Plaintiff's right to receive commission was because it was the "industry standard" that broker's commission in commercial leases were paid for by the landlord, whereupon landlord's broker would split commission with renter's broker. Plaintiff cited 19 NYCRR § 175.24 and NY CLS Real P § 443 to support Plaintiff's claim. Plaintiff testified that while the statutes referred to exclusive listings of residential real property, the same standard was afforded to commercial real property transactions.
Plaintiff testified that Plaintiff discussed with Hassan regarding several properties, one of which was a property located at 250 East 39th Street a/k/a 717/719 2nd Avenue, New York, New York ("Subject Premises") whose landlord, Timston Corp. ("Landlord"), was represented by Defendant. Plaintiff testified that Hassan wanted a property that had a larger space for a lower price (Plaintiff's Exhibit II). Plaintiff testified that she had offered Hassan other properties in the neighborhood, but that Hassan did not want them.
Plaintiff testified that in June 2022, Plaintiff learnt that the Tenant was to rent the Subject Premises. Plaintiff testified that she contacted Defendant regarding this issue, which confirmed that the Tenant was indeed signing a lease agreement ("Lease Agreement"), but that Defendant had not been informed that the Tenant was represented by Plaintiff. Plaintiff testified that she contacted Hassan, who told Plaintiff that he would get back to Plaintiff, but Hassan never did (Plaintiff's Exhibit IV). Plaintiff contended that had Hassan disclosed to the Landlord that Hassan had entered into an exclusive brokerage agreement with Plaintiff, then Plaintiff were to have been able to receive a commission from the Landlord, a split between Defendant and Plaintiff per "industry standard".
Plaintiff alleged that she contacted Arcus ("Arcus"), a broker employed by Defendant, regarding broker's commission that Plaintiff was purported to receive pursuant to the Brokerage Agreement. Plaintiff was later contacted by Laurine ("Laurine"), Defendant's Executive Vice-President and Managing Director of Sales. The email communications between Plaintiff and Laurine from September 7, 2022 to September 23, 2022 were in reference to phone calls made between them to determine whether Defendant could "offer something that would benefit [Plaintiff] and eliminate the need for [Plaintiff and Defendant] to monitor any legal proceedings between [Plaintiff] and the [Tenant]" (Plaintiff's Exhibit III). Plaintiff testified that Defendant offered to pay an amount of $5,000, which was a 10% of the alleged broker commission of $50,000 that Plaintiff allegedly was to receive from signing of the Lease Agreement. Plaintiff testified that Defendant rescinded the offer and that the matter was not settled. The email communications between Plaintiff and Laurine on September 23, 2022 suggest that Laurine, acting on behalf of Defendant, had at one point in his phone call with Plaintiff, offered Plaintiff a settlement of $8,500, which was rejected by Plaintiff and subsequently rescinded by Defendant (Plaintiff's Exhibit III).
Defendant testified that it had not been informed that the Tenant was represented by a broker. Defendant argued that no contract existed between Plaintiff and Defendant regarding this matter, and that Plaintiff failed to state an adequate cause of action. Defendant testified that it did not have a copy of the signed Lease Agreement. A copy of the unsigned Lease Agreement, and a copy of a signed brokerage agreement between the Landlord and Defendant dated June 1, 2022 with the "Commission Payment Schedule" attached were submitted into evidence. In the unsigned Lease Agreement, Clause 50 stated that "Landlord and Tenant warrant and represent that it negotiated this lease through Dahan and Arcus of Brown Harris Stevens ("Broker") and without the aid, intervention or employment of any other broker" (Defendant's Exhibit A). It also stated that "Landlord shall pay the brokerage commission to Broker, pursuant to the terms of a separate agreement" (id.).

II. Discussion
Here, the issues are: (1) whether there is an enforceable brokerage agreement between Plaintiff and the Tenant for Plaintiff to be entitled to recover a commission as the procuring cause of the Lease Agreement, and (2) as a result of such purported agreement, whether Defendant is liable to split the subsequent commission with Plaintiff.
In examining the Brokerage Agreement, the Court must first consider as to whether it gave rise to an exclusive agency or an exclusive right to deal or negotiate with potential lessors (see Curtis Props. Corp. v Grief Cos., 212 AD2d 259 [1st Dept 1995]; Morpheus Capital Advisors LLC v UBS AG, 23 NY3d 528, 534-35 [2014]). "The distinction between an exclusive agency and an exclusive right to sell is well established in a body of Appellate Division case law" (citing Morpheus Capital Advisors LLC, 23 NY3d 528, 534-35 [2014]; see e.g. Hammond, Kennedy & Co. v Servinational, Inc., 48 AD2d 394, 397, 369 NYS2d 712 [1st Dept 1975]; Solid Waste Inst. v Sanitary Disposal, 120 AD2d 915, 916, 502 NYS2d 835 [3d Dept 1986]). The Court notes that while much of the case law in this area regards brokerage agreements to sell, the same standard has been afforded to brokerage agreements to lease (see Harvard Assoc., Ltd. v. Hayt, Hayt & Landau, 264 AD2d 814, 815, 696 NYS2d 184 [2d Dept 1999]; Far Realty Assoc. Inc. v RKO Del. Corp., 34 AD3d 261, 262, 823 NYS2d 403 [1st Dept 2006]; Rosenhaus Real Estate, LLC v S.A.C. Capital Mgt., Inc., 121 AD3d 409, 410, 993 NYS2d 694 [1st Dept 2014]). In general, a broker is entitled to a commission only where the broker has been given the exclusive right to sell or lease; an exclusive agency merely precludes the owner from retaining another broker in the making of the sale or lease (see Morpheus Capital Advisors LLC, 23 NY3d 528, 534-35 [2014]; Rosenhaus Real Estate, LLC, 121 AD3d 409, 410, 993 NYS2d 694 [1st Dept 2014]). For an agreement to give rise to an "exclusive right", it must "clearly and expressly provide [ . . . ] that a commission [is] due upon sale by the owner or exclude [ . . . ] the owner from independently negotiating a sale" (id. at 535; see also Far Realty Assoc. Inc., 34 AD3d 261, 262, 823 NYS2d 403 [1st Dept 2006]).
By the express terms of the Brokerage Agreement at issue, there was no mention of a right for Plaintiff to receive a commission. Indeed, the word "commission" failed to appear at all in the Brokerage Agreement. Nor was there any evidence suggesting the existence of prior communications between Plaintiff and the Tenant promising a commission to be paid to Plaintiff. While the Brokerage Agreement stated, "we agree to lease . . . such space or property solely and exclusively through [Plaintiff]" (Plaintiff's Exhibit I), giving the impression of an exclusive right to deal contract, Plaintiff was clear in contending that had the Tenant mentioned to the Landlord that the Tenant had a broker, then the Landlord would have paid Plaintiff a [*3]commission. "The construction of the brokerage agreement as an exclusive right to deal contract is inconsistent with its representation that the broker will not look to defendants for payment of its commission" (see Curtis Props. Corp. v Grief Cos., 212 AD2d 259 [1st Dept 1995]). "Any ambiguity in the agreement must be resolved against plaintiff, who drafted the agreement" (id.). "The agreement thus lacked an essential term as to the amount of the commission and constituted an unenforceable agreement to agree" (see Parkway Group v Modell's Sporting Goods, 254 AD2d 338, 678 NYS2d 656 [2nd Dept 1998] citing Cooper Sq. Realty v A.R.S. Mgt., 181 AD2d 551, 552 [1st Dept 1992]).
In addition, the Court is not persuaded by Plaintiff's allegations that the reason for there not being any mention of a commission in the Brokerage Agreement was because of the "industry standard" that the commission was to be paid by the landlord. Plaintiff failed to provide any evidentiary proof or expert witnesses testifying as to what the "industry standard" entails. Although Plaintiff cited to 19 NYCRR § 175.24 and NY CLS Real P § 443 to support Plaintiff's claim, the Court finds that the statutes regard residential real property and is not applicable to the instant action.
The Court notes that the evidence established, at best, that Plaintiff and the Tenant agreed to an exclusive agency agreement, under which the tenant was precluded from retaining another broker but not from seeking to negotiate directly with the landlord (see Morpheus Capital Advisors LLC, 23 NY3d 528, 534-35 [2014]). In the instant action, the evidence suggested that the Tenant sought to negotiate directly with the Landlord, without the aid of another broker, approximately five months after the initial introduction of the property by Plaintiff. The unsigned Lease Agreement reflected that the only brokers involved were those employed by Defendant (Defendant's Exhibit A).
Even if the Court were to entertain that there was a valid brokerage agreement between Plaintiff and Hassan to deal and to negotiate with lessors, Plaintiff failed to establish that Plaintiff was the "procuring cause" of the lease and that there was a "direct and proximate link" between the bare introduction and the consummation of the lease (see Greene v. Hellman, 51 NY2d 197, 206, 433 N.Y.S.2d 75, 81, 412 N.E.2d 1301, 1307 (1980); SPRE Realty, Ltd. v Dienst, 119 AD3d 93, 97-98, 986 N.Y.S.2d 92 [1st Dept 2014]). "It has long been recognized that a broker, save when he enjoys the benefit of a special agreement to the contrary, does not automatically and without more make out a case for commissions simply because he initially called the property to the attention of the ultimate purchaser" (see Greene, 51 NY2d 197, 206, 433 N.Y.S.2d 75, 81, 412 N.E.2d 1301, 1307 [1980]). It is not enough for a broker to merely introduce a prospective landlord to the tenant (see Lanstar Int. Realty, Inc. v. New York News, Inc., 206 AD2d 411, 614 N.Y.S.2d 438 [2nd Dept. 1994]; Helmsley-Spear, Inc. v 150 Broadway NY Associates, L.P., 251 AD2d 185, 674 N.Y.S.2d 660 [1st Dept. 1998]; see also PBS Realty Advisors, LLC v Jones Lang LaSalle Ams. Inc. 100 AD3d 450, 953 N.Y.S. 2d 499 [1st Dept 2012]). The evidence submitted suggested that Plaintiff played a role in alerting the tenant to the availability of the Subject Premises. It is undisputed that there were discussions through email communications between Plaintiff and a broker employed by Defendant in January 2022 regarding the size and the proposed rental rate of the Subject Premises (Plaintiff's Exhibit II). However, it would be an overstatement to determine that Plaintiff acted as a "direct and proximate link" between the Landlord and the Tenant in the consummation of the lease in June 2022 (see Greene, 51 NY2d 197, 206, 433 N.Y.S.2d 75, 81, 412 N.E.2d 1301, 1307 [1980]). Plaintiff was not the procuring cause of the sale as "[she] had not brought together the 'minds of [*4]the buyer and seller'" (id., citing Sibbald v Bethlehem Iron Co., 83 NY 378 [1881]). As evidenced by Plaintiff's credible testimony that Plaintiff only learned of the lease in June 2022, it can be inferred that Plaintiff was never a part of the negotiation nor other work central to the procurement of the lease; in fact, Plaintiff was not even made aware of it. Had Plaintiff showed the Subject Premises to Hassan on multiple occasions and played an active part in communicating various offers so as to facilitate discussions leading to specific proposals for the essential terms of the Lease Agreement, Plaintiff may have been able to show that there was a proximate link between Plaintiff's efforts and the consummation of the transaction between Landlord and Tenant (see generally Helmsley-Spear, Inc. v 150 Broadway NY Associates, L.P., 251 AD2d 185, 674 N.Y.S.2d 660 [1st Dept. 1998] [Plaintiff broker's introduction of the property to defendant prospective tenant, inquiries about the amount and configuration of space available for lease there, and repeating a request of the prospective tenant for architectural plans to defendant landlord did not arise to a proximate link between plaintiff's efforts and the consummation of the transaction as plaintiff was not part of the negotiations for the lease agreement]; Greene, 51 NY2d 197, 206, 433 N.Y.S.2d 75, 81, 412 N.E.2d 1301, 1307 [1980] [Plaintiff broker did not act as a direct and proximate link by merely alerting the buyer to the availability of the property]). Instead, Plaintiff's involvement ended with her introduction of the property to Hassan; this was corroborated by Plaintiff's testimony that Plaintiff soon afterwards offered Hassan other properties in the neighborhood upon finding that Hassan was initially not interested in the Subject Premises. As such, Plaintiff failed to prove that Plaintiff had played an essential role in the negotiating stages of securing lease.
In considering whether Defendant is liable to split the commission with Plaintiff, Defendant's affirmative defense to the complaint was correct in stating that Plaintiff failed to state a cause of action against Defendant, as there was never a contract between Plaintiff and Defendant in the first place to split the commission. To prevail on a breach of contract claim, a plaintiff must establish "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach" (see Harris v Seward Park Housing Corp., 79 AD3d 425, 913 N.Y.S.2d 161 [1st Dept 2010]). As established during the trial, Plaintiff was not entitled to a commission as the Brokerage Agreement was, at best, an exclusive agency contract. The contract that Plaintiff alleged that existed between Plaintiff and Defendant, was therefore, never in existence. Moreover, the burden of proof falls on Plaintiff to establish damages of $50,000. Plaintiff failed to establish during trial how she came to calculate the damages claimed. Plaintiff here has failed to establish its prima facie case against Defendant. 

III. Order
Accordingly, it is
ORDERED that Plaintiff's complaint is DISMISSED.
This constitutes the decision and order of this Court.
Date: January 13, 2025
New York, NY
Honorable Wendy Changyong Li, J.C.C.