■ SIONI & PARTNERS, LLC, Respondent, v VAAK PROPERTIES, LLC, Appellant, et al., Defendant. [939 NYS2d 57]—

Judgment, Supreme Court, New York County (Manuel J. Mendez, J.), entered August 5, 2011, awarding plaintiff the total sum of $168,402.60, unanimously affirmed, with costs.

The facts of this case are relatively straightforward, especially defendant Vaak Properties, LLC's steadfast refusal to pay a validly earned broker's fee. On June 4, 2010, plaintiff real estate broker and Vaak Properties entered into an "exclusive right to sell agreement." The agreement gave plaintiff the exclusive right to sell the property, located at 1135 Boynton Avenue, Bronx, New York, at a price of $6.6 million, with a 3% commission. The agreement stated, among other things, "If the broker is able and willing to sell the property at an agreed price, commission of 3% will be paid to the broker." The agreement also stated that "[i]n the event that the price is negotiated and agreed by the seller, the commission also will be negotiated." This agreement was "valid for 3 months, until September 4, 2010."

Thereafter, plaintiff procured a buyer, who made an offer of $6 million. Plaintiff communicated the buyer's offer to defendant and defendant accepted. Because the buyer's offer was less than the original $6.6 million asking price, defendant and plaintiff entered into a new contract (amended commission agreement), on September 2, 2010, in accordance with the original listing agreement. This amended commission agreement stated, in pertinent part:

"The following constitutes and *confirms* our agreement regarding the proposed sale of the above referenced property . . .

"In connection with the proposed contract of purchase and sale, you agree to pay us, and we agree to accept, as compensation for our services as brokers the sum of $160,000 (one hundred and sixty thousand dollars) as compensation, if as and only when title closes.

"We hereby represent that we are duly licensed real estate

brokers in the State of New York and you acknowledge that [plaintiff] is the broker responsible for the sale of the property (emphasis added)."

Both plaintiff and defendant signed this amended commission agreement. However, above the line for defendant's signature was handwritten: "subject to attorney modifications & approval."

The next day, September 3, 2010, defendant and the buyer entered into a contract for sale of the property. Section 14.01 of the contract states, among other things: "If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have a right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D." According to plaintiff, and unchallenged by defendant, the only broker listed in schedule D is plaintiff. It is also clear that the only party with whom plaintiff had a "separate agreement" to be paid a commission was defendant.

Over three months later, on December 20, 2010, defendant's principal wrote to plaintiff, indicating that "[t]he attorney has approved $100,000, instead of $160,000, which will be paid at the time of closing." Although the sale closed on January 21, 2011, for the price of $6 million, and despite demands by plaintiff for its brokerage commission, defendant never paid any commission.

On or about December 28, 2010, plaintiff commenced this action, seeking the $160,000 commission agreed to in the amended commission agreement. Defendant responded, asserting that the payment of a commission "was conditional and the condition was not satisfied," and that "plaintiff was not the procuring cause of the transaction."

On or about April 13, 2011, plaintiff moved for summary judgment, asserting, essentially, that it actively marketed the building, and that the amended commission agreement clearly stated that plaintiff was the procuring cause of the sale, as did the contract of sale. Moreover, even if the amended commission agreement was unenforceable, the exclusive right to sell agreement would govern, entitling plaintiff to a 3% commission, which would be $180,000. Plaintiff also submitted the affidavit of an officer of the buyer, who averred that he learned that the building was for sale through plaintiff, and that the buyer made the offer as a result of plaintiff's efforts.

In response to plaintiff's summary judgment motion, defendant asserted that there was no evidence that defendant's attorney ever approved the amended commission agreement (although it did not pursue this argument on appeal). Defendant argues on appeal that because the amended commission agreement superseded the exclusive right to sell agreement, plaintiff has the burden of showing that he was the procuring cause of the sale. According to defendant, plaintiff has not met its burden, because plaintiff did not attend three face-to-face meetings between buyer and defendant, which took place after the amended commission agreement was executed; defendant asserts that the "only thing plaintiff brought about was the purchase price." (These three meetings took place after the sales price was agreed to.)

In order for a real estate broker to demonstrate that he or she was the procuring cause of a transaction, the broker must demonstrate "a direct and proximate link . . . between the bare introduction [of buyer and seller] and the consummation [of sale]" (*Greene v Hellman*, 51 NY2d 197, 206 [1980]). Plaintiff's, the buyer's, and even defendant's testimony clearly demonstrate that plaintiff was the procuring cause of the sale. The buyer's affidavit states that he purchased the property "as a direct result" of plaintiff's efforts, and the amended commission agreement contains an acknowledgment by defendant that plaintiff "is the broker responsible for the sale of the property." Additionally, the contract of sale also contains an acknowledgement, in schedule D, that plaintiff was the only broker with which either defendant or buyer had dealt, and states that the commission "shall be paid pursuant to separate agreement by the party specified in Schedule D [defendant]." That "separate agreement" is the amended commission agreement, and this acknowledgment in the contract of sale is an admission of plaintiff's right to its commission (*see Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64 [1999]; *May Co. v Monaco Assoc.*, 80 AD2d 798 [1981]).

The court properly determined that plaintiff was entitled to the commission of $160,000 on the sale of the property. Plaintiff and defendant entered into an exclusive right to sell agreement, which expressly anticipated that, "[i]n the event the price is negotiated and agreed by the seller, the commission will also be negotiated." Prior to the expiration of this exclusive agreement, plaintiff negotiated a price with the purchaser, which defendant accepted, and plaintiff and defendant entered into an amended commission agreement, whereby defendant agreed to pay and plaintiff agreed to accept $160,000 as the commission. This

amended agreement was not a new listing agreement that superseded the exclusive listing agreement; it was simply an agreement as to the amount of commission that plaintiff had already earned and was perfectly consistent with the exclusive right to sell agreement. Moreover, the amended commission agreement expressly stated that defendant acknowledged that plaintiff was the procuring cause of the sale of the property and that the commission was contingent only on the closing of the sale, which ultimately occurred.

Plaintiff not only called the property to the buyer's attention and introduced the buyer to defendant, it also provided information about the property to the buyer, arranged for the buyer to visit the property, and brought about the ultimate purchase price. Thus, plaintiff was entitled to its commission, without the need to prove it was the procuring cause of the sale, since a broker with an exclusive right to sell need not show that it was the procuring cause of the sale (*see Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 268 [1995] ["an exclusive right to sell agreement entitles the broker to receive a commission on a sale to any purchaser, whether or not the broker played a part in the negotiations"]). In any event, both the contract of sale and the amended commission agreement expressly establish that plaintiff was the procuring cause. Concur—Saxe, J.P., Catterson, Moskowitz, Acosta and Renwick, JJ.