■ Douglas Elliman, LLC, Doing Business as Prudential Douglas Elliman Real Estate, Respondent-Appellant, v Rhona Silver et al., Appellants-Respondents. [24 NYS3d 207]—

In an action to recover a real estate broker's commission, the defendants appeal (1), as limited by their brief, from so much of an order of the Supreme Court, Suffolk County (Emerson, J.), dated September 25, 2013, as denied that branch of their motion which was pursuant to CPLR 4404 (a) to set aside a jury verdict in favor of the plaintiff and against them and for judgment as a matter of law or, in the alternative, to set aside the verdict as contrary to the weight of the evidence and for a new trial, and (2) from a judgment of the same court, entered July 17, 2014, which, upon the order and upon the jury verdict, is in favor of the plaintiff and against them in the total sum of $2,147,128.13, and the plaintiff cross-appeals from so much of the same judgment as was entered upon an order of the same court dated May 9, 2014, inter alia, granting that branch of the defendants' motion which was for an award of attorneys' fees relating to a prior trial in this action which, at the plaintiff's request, ended in a mistrial, and granting its motion for pre-verdict interest only to the extent of awarding it pre-verdict interest from June 20, 2009, in effect, awarded the defendants attorneys' fees in the sum of $60,000 and awarded it pre-verdict interest only to the extent of awarding such interest from June 20, 2009.

Ordered that the appeal from the order dated September 25, 2013, is dismissed; and it is further,

Ordered that the judgment is reversed, on the law, that branch of the defendants' motion which was pursuant to CPLR 4404 (a) to set aside the jury verdict and for judgment as a matter of law is granted, the complaint is dismissed, the order dated September 25, 2013, is modified accordingly, the order dated May 9, 2014, is vacated, and the matter is remitted to the Supreme Court, Suffolk County, for a new determination of that branch of the defendants' motion which was for an award of attorneys' fees; and it is further,

Ordered that one bill of costs is awarded to the defendants.

The appeal from the intermediate order dated September 25, 2013, must be dismissed because the right of direct appeal therefrom terminated upon the entry of the judgment in the action (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from that order are brought up for review and have been considered on the appeal from the judgment (*see* CPLR 5501 [a] [1]).

In this action to recover a real estate broker's commission, the plaintiff, a real estate brokerage firm, alleged that it was entitled to a commission for the sale of certain real property known as the Huntington Town House by the defendants to Lowe's Home Centers, Inc. (hereinafter Lowe's). The plaintiff acknowledged that there was no written broker's agreement and it was not involved in the final negotiations leading to the ultimate sale of the property. It contended, however, that it had an oral agreement with the defendant Rhona Silver in which a commission was implied. According to the plaintiff, it was the procuring cause of the sale because it generated a chain of circumstances that proximately led to the sale, but Silver intentionally excluded it from the negotiations in order to avoid the payment of a broker's commission. Following a trial, the jury returned a verdict in favor of the plaintiff.

To prevail on a cause of action to recover a commission, the broker must establish (1) that it is duly licensed, (2) that it had a contract, express or implied, with the party to be charged with paying the commission, and (3) that it was the procuring cause of the sale (*see Stanzoni Realty Corp. v Landmark Props. of Suffolk, Ltd.*, 19 AD3d 582, 583 [2005]; *Steven Fine Assoc. v Serota*, 273 AD2d 375 [2000]; *Friedland Realty v Piazza*, 273 AD2d 351 [2000]; *Ormond Park Realty v Round Hill Dev. Corp.*, 266 AD2d 523, 524 [1999]). "[T]he duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue" (*Sibbald v Bethlehem Iron Co.*, 83 NY 378, 382 [1881]). To establish that a broker was the procuring cause of a transaction, the broker must establish that there was "a direct and proximate link, as distinguished from one that is indirect and remote, between the bare introduction and the consummation" (*Greene v Hellman*, 51 NY2d 197, 206 [1980]; *see Hentze-Dor Real Estate, Inc. v D'Allessio*, 40 AD3d 813, 815-816 [2007]). Where, as here, the broker is not involved in the negotiations leading up to the completion of the deal, the broker must establish that it " 'created an amicable atmosphere in which negotiations proceeded or that [it] generated a chain of

circumstances that proximately led to the sale' " (*Buck v Cimino*, 243 AD2d 681, 684 [1997], quoting 2 Warren's Weed, New York Real Property § 6.01 [4] [a] [4th ed 1998]; *see Talk of the Town Realty v Geneve*, 109 AD3d 981, 982 [2013]; *Zere Real Estate Servs., Inc. v Parr Gen. Contr. Co., Inc.*, 102 AD3d 770, 773 [2013]; *Hentze-Dor Real Estate, Inc. v D'Allessio*, 40 AD3d at 816; *Dagar Group v Hannaford Bros. Co.*, 295 AD2d 554, 555 [2002]; *Friedland Realty v Piazza*, 273 AD2d 351 [2000]).

The Supreme Court should have granted that branch of the defendants' motion which was pursuant to CPLR 4404 (a) to set aside the jury verdict and for judgment as a matter of law. In evaluating the legal sufficiency of the evidence, a reviewing court must consider the evidence in the light most favorable to the nonmovant, and afford that party every favorable inference that may properly be drawn from the facts presented (*see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]; *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *Rumford v Singh*, 130 AD3d 1002, 1004 [2015]; *Bzezi v Eldib*, 112 AD3d 772, 774 [2013]). In order to grant judgment as a matter of law, the court must conclude that there is no valid line of reasoning or permissible inferences which could possibly lead rational persons to the conclusion reached by the jury on the basis of the evidence presented at trial (*see Szczerbiak v Pilat*, 90 NY2d at 556; *Cohen v Hallmark Cards*, 45 NY2d at 499; *Tapia v Dattco, Inc.*, 32 AD3d 842, 844 [2006]; *Velez v Goldenberg*, 29 AD3d 780, 781 [2006]).

Here, there was no valid line of reasoning which could have led to the conclusion that the plaintiff was the procuring cause of the sale. Viewing the trial evidence in the light most favorable to the plaintiff, it showed that in 2004, Lowe's regional real estate manager, Wade Laufenberg, discussed the possibility of acquiring the subject property with Barry Newman, who had an ownership interest in the property along with the defendant Rhona Silver. In order to develop the property in the way Lowe's intended, it would need certain approvals from the Town of Huntington. At that time, the Town indicated disapproval of the project. Sometime in late 2004, Silver began working with Esther Muller, a broker employed with the plaintiff, to develop condominiums on the property, which would require rezoning approval by the Town. By September 2005, Silver decided that she simply wanted to sell the property. Muller's stepson, who worked in the Town's zoning and planning office, suggested to Muller that Silver sell the property to Lowe's. Muller gave this information to Faith Hope Consolo, who chaired the plaintiff's retail division. Consolo put together a team that contacted Laufenberg and suggested that Lowe's

purchase the Huntington Town House property. Laufenberg told the plaintiff's brokers that he previously had attempted to acquire the property, and they assured him that they could work out a deal with Silver. According to the plaintiff's brokers, Silver agreed orally that if they could negotiate a deal with Lowe's, Silver would pay them a commission. The plaintiff's brokers further testified that nobody mentioned Barry Newman and they did not know that Silver was not the sole owner of the property.

The plaintiff's brokers arranged for a meeting with Laufenberg and Silver on November 29, 2005, at which Silver stated that she wanted $38 to $46 million for the property and she would not "tie up" the property. On December 13, 2005, Laufenberg submitted a proposal to the plaintiff in which Lowe's would purchase the property either for $27 million subject to certain contingencies, or for $17 million with no contingencies. Silver rejected the proposal on the ground that it was too low and she would not accept any contingencies. On December 30, 2005, Laufenberg submitted a second proposal through the plaintiff in which Lowe's would purchase the property for $28 million subject to certain contingencies. Silver rejected this proposal on the same grounds as the first. On January 30, 2006, Laufenberg submitted a third proposal in which Lowe's would lease the property for 20 years at a cost of $1.5 million per year. According to the plaintiff's brokers, Silver indicated to them that she would consider this offer and discuss it with her accountants, but she never followed through with the brokers or took their advice of making a counterproposal to Laufenberg.

Unknown to the plaintiff's brokers, on February 6, 2006, Silver entered into a written agreement to sell the property to Dan Shovolian for $37.5 million. By June 6, 2006, that deal had unraveled to such an extent that Silver and Newman commenced an action in the Supreme Court for specific performance on the contract. Sometime in the spring of 2006, someone apparently working for Shovolian contacted Laufenberg and represented that Shovolian was the owner of the Huntington Town House property and was interested in making a deal with Lowe's. Laufenberg independently verified that ownership of the property had not been transferred, and he reached out to Newman to discuss the status of the property. Upon failure of the Shovolian deal, Newman and Laufenberg began negotiations again on the possibility of Lowe's purchasing the property. They entered into a contract of sale on February 6, 2007, in which Lowe's agreed to purchase the property for $38.5 million

with no contingencies. Closing of the title occurred in June 2007.

There was no valid line of reasoning or permissible inferences from the evidence presented at trial that could have led the jury to the conclusion that the plaintiff generated a chain of circumstances which proximately led to the subject sale. Contrary to the plaintiff's contention, there was no evidence that the parties were "in the midst of negotiations instituted by the broker, . . . which were plainly and evidently approaching success" when Silver purposely excluded the brokers so that she could conclude the bargain without their aid and avoid payment of commissions about to be earned (*Sibbald v Bethlehem Iron Co.*, 83 NY at 384). To the contrary, the evidence showed that the plaintiff's brokers procured three offers, all of which were significantly lower than what Silver indicated she would consider, and those negotiations came to an end when Silver independently found a buyer willing to pay her asking price on the terms she sought. When that deal eventually fell through, Newman and Laufenberg, who had worked together in the past, began negotiations, without any broker intervention, that led to the subject sale. Consequently, the defendants' motion to set aside the jury's verdict should have been granted.

Following the jury's verdict, the defendants moved, inter alia, for an award of attorneys' fees relating to a prior trial in this action that ended in a mistrial at the plaintiff's request when one of its witnesses became unavailable. The plaintiff cross-appeals, inter alia, from so much of the judgment as, in effect, awarded the defendants counsel fees relating to the prior trial. Because the trial court's award of counsel fees was predicated in part on the plaintiff's ultimate success and because it was otherwise based upon matter not appearing on the face of the supplemental joint record on appeal, we vacate the order dated May 9, 2014, awarding counsel fees, and remit the matter to the Supreme Court for reconsideration of that branch of the defendants' motion which was for an award of counsel fees relating to the first trial.

In light of our determination, we need not reach the parties' remaining contentions. Dillon, J.P., Dickerson, Hinds-Radix and Maltese, JJ., concur.