■ SAUNDERS VENTURES, INC., Doing Business as SAUNDERS AND ASSOCIATES, Appellant, v CATCOVE GROUP, INC., et al., Respondents. [58 NYS3d 417]—

In an action to recover a real estate brokerage commission, the plaintiff appeals from (1) an order of the Supreme Court, Suffolk County (Whelan, J.), dated December 4, 2014, which denied its motion for summary judgment on the complaint and granted the defendants' cross motion for summary judgment dismissing the complaint, and (2) a judgment of the same court entered March 16, 2015, which, upon the order, is in favor of the defendants and against it dismissing the complaint.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is modified, on the law, by deleting the provision thereof dismissing the complaint in its entirety and substituting therefor a provision dismissing only the second cause of action; as so modified, the judgment is affirmed, that branch of the defendants' cross motion which was for summary judgment dismissing the first cause of action is denied, and the order is modified accordingly; and it is further,

Ordered that one bill of costs is awarded to the plaintiff.

The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]).

The plaintiff is a licensed real estate brokerage firm. The defendants are the former owners of parcels of vacant real property located in Southampton (hereinafter the subject property), which had been identified by the Peconic Estuary Program as high priority for preservation and protection.

By letter agreement dated July 17, 2009, the plaintiff and the defendants entered into a nonexclusive brokerage agreement for a period of 120 days concerning the sale of the subject property at the listed price of $8 million. The brokerage agreement provided that the plaintiff would be entitled to a commission of 6% of the purchase price upon closing, from the proceeds of the sale.

The brokerage agreement also included an extension clause, or "tail provision," which is commonly included in a real estate listing contract to protect a broker from loss of compensation when a property is sold by the owner after the termination of the listing contract to a person who was introduced to the property by the broker (see Ackerman v Dobbs, 181 AD2d 704 [1992];

*Picotte Real Estate v Gaughan,* 107 AD2d 996, 997 [1985]). The extension clause provided that "[a]t the end of the term, [the defendants] will either mutually extend the agreement or [the plaintiff] should provide a written list . . . of any actively interested purchasers and [the plaintiff] will be protected for a period of one year thereafter should a closing take place with [the plaintiff's] registered client."

Prior to the expiration of the brokerage agreement, in August 2009, the plaintiff's broker, Lee Minetree, arranged and attended a meeting with representatives of the defendants, The Nature Conservancy of Long Island (hereinafter TNC) and the County of Suffolk, to discuss the acquisition of the subject property by the County via a "bargain sale," with TNC serving as an intermediary. According to the plaintiff, the subject property would first be conveyed by the defendants to TNC, the intermediary, for a purchase price less than the appraised fair market value, and the subject property then would be conveyed by TNC to the County, the ultimate purchaser. Once completed, the seller would receive the bargained-for sale price for its property and then take a charitable deduction in an amount equal to the difference between the appraised fair market value and the actual consideration received from the sale. After the initial meeting, the County made a formal offer to the defendants for the purchase of the subject property. As negotiations progressed, contracts for the two-part sale were drafted.

In January 2010, the plaintiff provided the defendants with two lists of prospective purchasers, which included the Peconic Land Trust (hereinafter PLT), TNC, and the County. As evidenced by a document signed only by the plaintiff's broker on August 2, 2010, the brokerage commission the plaintiff was willing to accept was purportedly reduced from 6% to 4%.

In or around September 2010, the defendants replaced TNC with PLT as the intermediary. On September 21, 2010, the defendants and PLT executed a contract of sale for the subject property. This contract, as amended on January 26, 2011, and further amended in June 2011, closed on August 31, 2011. One week later, PLT conveyed six parcels, consisting of 13.9026 acres, to the County for the purchase price of $2,432,955.

The plaintiff commenced this action against the defendants in December 2011, alleging breach of contract and unjust enrichment. The plaintiff alleged that it was entitled to recover the sum of $97,318.20, representing a 4% commission on the sale of the subject property, since it was the procuring cause of the sale, and that the defendants would be unjustly enriched should they be permitted to keep the entire proceeds of the

sale. The plaintiff subsequently moved for summary judgment on the complaint and the defendants cross-moved for summary judgment dismissing the complaint. The Supreme Court granted the defendants' cross motion, denied the plaintiff's motion, and dismissed the complaint. The plaintiff appeals.

"To prevail on a cause of action to recover a commission, the broker must establish (1) that it is duly licensed, (2) that it had a contract, express or implied, with the party to be charged with paying the commission, and (3) that it was the procuring cause of the sale" (*Douglas Elliman, LLC v Silver*, 136 AD3d 658, 659 [2016]; *see Town & Country Southampton v Grey*, 299 AD2d 541, 541 [2002]). "Where the broker is not involved in the negotiations leading up to the completion of the deal, the broker must establish that [it] created an amicable atmosphere in which negotiations proceeded or that [it] generated a chain of circumstances that proximately led to the sale" (*Dagar Group v Hannaford Bros. Co.*, 295 AD2d 554, 555 [2002]). "Although as a general rule a real estate broker will be deemed to have earned a commission when the broker produces a purchaser who is ready, willing, and able to purchase the property on terms acceptable to the seller, the broker's right to a commission may be varied by agreement" (*Pantigo Realty v Estate of Schrenko*, 249 AD2d 525, 525 [1998]).

Here, the Supreme Court improperly granted that branch of the defendants' cross motion which was for summary judgment dismissing the first cause of action, which was to recover damages for breach of contract. Contrary to the court's conclusion that, as a matter of law, the closing had to take place by the end of the one-year protection period, i.e., November 14, 2010, there is an ambiguity in the brokerage agreement as to whether the commission was to be earned when the contract of sale was executed or only upon a successful closing within the one-year period set forth in the extension clause (*see Feinberg Bros. Agency v Berted Realty Co.*, 70 NY2d 828 [1987]; *Steve Elliot, LLC v Teplitsky*, 59 AD3d 523 [2009]; *Sopher v Martin*, 243 AD2d 459 [1997]). This ambiguity should be decided by a trier of fact (*see Greiner-Maltz Co. v Kalex Chem. Prods.*, 142 AD2d 552 [1988]). There is also a triable issue of fact as to whether the plaintiff was the procuring cause of the sale by creating an amicable atmosphere in which negotiations proceeded or generating a chain of circumstances that proximately led to the sale (*see Dagar Group v Hannaford Bros. Co.*, 295 AD2d at 554).

Alternatively, if the plaintiff cannot establish that it was the procuring cause of the sale, it nevertheless may be entitled to

recover a commission if the defendants terminated the plaintiff's activities in bad faith and as a mere device to escape the payment of the commission (*see Werner v Katal Country Club*, 234 AD2d 659 [1996]). A triable issue of fact exists as to whether the defendants terminated negotiations with TNC in bad faith so as to deprive the plaintiff of a commission (*see Trylon Realty Corp. v Di Martini*, 40 AD2d 1029 [1972], *affd* 34 NY2d 899 [1974]). Accordingly, we reinstate the first cause of action.

The Supreme Court, however, properly granted that branch of the defendants' cross motion which was for summary judgment dismissing the second cause of action, which was to recover damages for unjust enrichment. "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]). Here, there is no dispute as to the existence of a valid written contract which details the circumstances under which the plaintiff would be entitled to a commission. Thus, the Supreme Court properly dismissed the second cause of action.

The plaintiff's remaining contentions are without merit. Mastro, J.P., Dillon, Roman and Brathwaite Nelson, JJ., concur.