New York Commercial Realty Group, LLC v Beau Pere Real Estate, LLC (2023 NY Slip Op 02524)

New York Commercial Realty Group, LLC v Beau Pere Real Estate, LLC

2023 NY Slip Op 02524

Decided on May 10, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 10, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
LINDA CHRISTOPHER
JOSEPH A. ZAYAS
BARRY E. WARHIT, JJ.

2020-06178
 (Index No. 68465/18)

[*1]New York Commercial Realty Group, LLC, et al., appellants-respondents, 
v
Beau Pere Real Estate, LLC, respondent-appellant.

Ruskin Moscou Faltischek, P.C., Uniondale, NY (E. Christopher Murray and Elizabeth S. Sy of counsel), for appellants-respondents.
Harfenist Kraut & Perlstein LLP, Lake Success, NY (Steven J. Harfenist and Andrew C. Lang of counsel), for respondent-appellant.

DECISION & ORDER
In an action to recover real estate brokerage commissions, the plaintiffs appeal, and the defendant cross-appeals, from an order of the Supreme Court, Westchester County (James W. Hubert, J.), dated June 22, 2020. The order, insofar as appealed from, denied that branch of the plaintiffs' motion which was for summary judgment on the first cause of action and granted that branch of the defendant's cross-motion which was for summary judgment dismissing the first cause of action. The order, insofar as cross-appealed from, in effect, denied that branch of the defendant's cross-motion which was, in effect, for summary judgment on its counterclaim for an award of attorneys' fees.
ORDERED that the order is modified, on the law, by deleting the provision thereof granting that branch of the defendant's cross-motion which was for summary judgment dismissing the first cause of action, and substituting therefor a provision denying that branch of the cross-motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, with costs to the plaintiffs.
The plaintiffs are licensed real estate brokerage firms, and the defendant is the former owner of a parcel of real property located in Elmsford (hereinafter the subject property). In October 2016, the plaintiffs and the defendant entered into a "CO-EXCLUSIVE AGREEMENT" (hereinafter the brokerage agreement), which granted the plaintiffs "the exclusive right to sell" the subject property. The brokerage agreement provided that, "[i]n the event of a sale," the defendant would pay the plaintiffs a specified percentage of the sale price as a commission, with the percentage depending upon the range into which the sale price fell and whether an outside broker was involved. By its terms, the brokerage agreement became effective on October 17, 2016, remained in effect for six months, would automatically renew on a month-to-month basis thereafter, and could be canceled by either party upon "30 day written notice." Another provision authorized an award of attorneys' fees to the "prevailing party" in any litigation commenced by either party "to enforce its rights under this agreement." The brokerage agreement also included a provision denominated "Survival Clause," which stated, "Any customer which originated during the terms of the exclusive will survive its expiration."
During the initial six-month term of the brokerage agreement, the plaintiffs provided information about the subject property to John Livanos and Jared Marcus, who were the principals of LM Real Estate Partners (hereinafter LM), and introduced Livanos and Marcus to the defendant's principals. Following negotiations, LM made an offer to purchase the subject property for $8.75 million, but the defendant rejected the offer as too low. On May 2, 2017, the defendant gave the plaintiffs written notice of the defendant's intent to terminate the brokerage agreement, and by the terms of the brokerage agreement, that termination took effect 30 days later.
In September 2017, the defendant and LM executed an expressly nonbinding written offer to purchase the subject property for $9 million, wherein one of the plaintiffs was recognized as "the sole procuring Broker for the transactions." In October 2017, the defendant rejected that offer when it received a higher offer from another real estate broker on behalf of another prospective purchaser. The defendant pursued the new offer, but after several months of negotiations, that deal fell through, and in March or April 2018, the prospective purchaser canceled the contract of sale it had entered into with the defendant.
Sometime thereafter, Livanos and one of the defendant's principals engaged in direct negotiations for the sale of the subject property, without the plaintiffs' involvement. In June 2018, the defendant entered into a contract of sale with Livanos and Marcus, now acting on behalf of LM Acquisitions, LLC, with a purchase price of $9.1 million. The purchase price was subsequently reduced to $9 million, and the closing took place in August 2018.
In November 2018, the plaintiffs commenced this action against the defendant, seeking, in the first cause of action, to recover the brokerage commission allegedly owed to them under the brokerage agreement in connection with the sale of the subject property. After joinder of issue and the completion of discovery, the plaintiffs moved, inter alia, for summary judgment on the first cause of action. The defendant cross-moved, among other things, for summary judgment dismissing the first cause of action and, in effect, for summary judgment on its counterclaim for an award of attorneys' fees under the brokerage agreement. In an order dated June 22, 2020, the Supreme Court, inter alia, denied that branch of the plaintiffs' motion which was for summary judgment on the first cause of action, granted that branch of the defendant's cross-motion which was for summary judgment dismissing the first cause of action, and, in effect, denied that branch of the defendant's cross-motion which was, in effect, for summary judgment on its counterclaim for an award of attorneys' fees. The plaintiffs appeal, and the defendant cross-appeals.
Generally, in order to prevail on a cause of action to recover a real estate brokerage commission, a broker "must establish (1) that it is duly licensed, (2) that it had a contract, express or implied, with the party to be charged with paying the commission, and (3) that it was the procuring cause of the sale" (Saunders Ventures, Inc. v Catcove Group, Inc., 209 AD3d 893, 896 [internal quotation marks omitted]; see Cpex Real Estate, LLC v Tomtro Realty Corp., 202 AD3d 905, 906).
Here, it is undisputed that the original term of the brokerage agreement was not in effect at the time the subject property was sold, as the defendant's termination of the brokerage agreement became effective in June 2017, and the sale of the subject property was consummated in August 2018. In support of their motion for summary judgment, however, the plaintiffs, invoking the Survival Clause, argued that they were entitled to a commission despite the expiration of the brokerage agreement, since Livanos and Marcus were "customer[s]" who "originated" during the term of the brokerage agreement. In the order appealed from, the Supreme Court found the Survival Clause to be "so vague and indefinite as to be unenforceable as a matter of law." This was error. Contrary to the court's conclusion, the language of the Survival Clause was sufficiently clear to convey the clause's intended meaning. This provision was of a type frequently inserted into real estate brokerage contracts, sometimes known as an "extension clause," which serves to "foreclose a seller from receiving the benefit of the broker's services and then, after a buyer had been found during the period the agreement was in force, avoiding the commission through the simple device of waiting until the brokerage contract had expired" (Ackerman v Dobbs, 181 AD2d 704, 706; see Saunders Ventures, Inc. v Catcove Group, Inc., 151 AD3d 991, 992-993; Picotte Real Estate v [*2]Gaughan, 107 AD2d 996, 997). Indeed, in its submissions in support of its cross-motion for summary judgment, the defendant acknowledged that "the purchaser was a person originated by Plaintiffs during the Brokerage Agreement's term and subject to the parties['] 'Survival Clause,'" thereby conceding not only that the defendant fully understood the meaning of the Survival Clause, but also that the clause was applicable under the facts of this case.
Rather than arguing that the Survival Clause was vague or inapplicable, the defendant contended that, since the contract of sale was entered into more than one year after the expiration of the brokerage agreement, the duration of the Survival Clause's applicability was "unreasonable as a matter of law." The Supreme Court accepted this argument, explaining that, even if it were to find the meaning of the Survival Clause to be clear, the clause would nonetheless be defective, since it "fails to set forth a time period during which it would remain in effect," and thus, "essentially extends the agency indefinitely." The court asserted that "[e]xtension clauses generally include a specific time period during which a commission is owed after the expiration or termination of the brokerage agreement," and, relying on Hampton Realty of Bridgehampton v Conklin (220 AD2d 385, 387), the court concluded that, "[i]n cases where a brokerage agreement contains no specified duration, a 'reasonable duration' is implied by the courts." Following the lead of the Hampton Realty decision, the court decided that the Survival Clause should be deemed to be in effect for a period of one year. Accordingly, the court determined that the plaintiffs were not entitled to a commission pursuant to the Survival Clause, since the execution of the contract of sale (which occurred one year and six days after the termination of the brokerage agreement became effective) and the closing on the sale of the subject property (which occurred approximately 15 months after the termination of the brokerage agreement became effective) both took place more than one year after the termination of the brokerage agreement.
This determination was erroneous. Not all extension clauses contain a time limit (see e.g. Ackerman v Dobbs, 181 AD2d at 705), and the defendant has cited no authority supporting the proposition that an extension clause must contain a time limit in order to be enforceable. The Hampton Realty decision did not involve a discrete provision like an extension clause, but rather the underlying brokerage agreement itself (see Hampton Realty of Bridgehampton v Conklin, 220 AD2d at 387), in which duration may be seen as an essential contractual term, since, without a temporal limitation, the agreement might actually have the effect of "extend[ing] the agency indefinitely." Here, the brokerage agreement contained provisions limiting its duration, and, unlike a typical brokerage agreement, the Survival Clause contained inherent limits that served to adequately narrow its scope. Instead of being limited in duration, the clause was applicable only in the event that the subject property was sold to a "customer" who "originated" during the period of time in which the brokerage agreement was in effect. The principals involved in this agreement, all of whom had ample experience in the realm of real estate transactions, agreed to an extension clause that had no time limit. Freedom of contract "prevails in an arm's length transaction between sophisticated parties such that courts generally may not relieve them of the consequences of their bargain" (U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 38 NY3d 169, 177-178 [internal quotation marks omitted]). A court "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (id. at 178 [internal quotation marks omitted]).
In this case, the Supreme Court's effective amendment of the Survival Clause to add a provision limiting its duration to one year was not warranted. Instead, the parties' agreement should have been enforced as written. Accordingly, we conclude that the plaintiffs satisfied the requirement of showing that they had a contract with the defendant providing for the payment of a commission to the plaintiffs.
As noted above, a broker seeking to recover a commission is normally required to make a further showing that it was the procuring cause of the sale. The plaintiffs argue that no such showing was required in this case, since the brokerage agreement granted them the exclusive right to sell the subject property, and that, in any event, they demonstrated that they were the procuring cause of the sale of the subject property. The defendant concedes that the brokerage agreement granted the plaintiffs the exclusive right to sell the subject property. Where a broker has been [*3]granted an "exclusive agency," the seller cannot "employ another broker," but "would not be precluded from itself making the sale without becoming liable to [the broker] for a commission" (Hammond, Kennedy & Co. v Servinational, Inc., 48 AD2d 394, 397). By contrast, where a broker has been granted an "exclusive right to sell," the broker "would be entitled to a commission even if the defendant alone were responsible for the sale" (id. at 397; see Morpheus Capital Advisors LLC v UBS AG, 23 NY3d 528, 534-535; Rachmani Corp. v 9 E. 96th St. Apt. Corp., 211 AD2d 262, 268). As a result, "a broker with an exclusive right to sell need not show that it was the procuring cause of the sale" (Sioni & Partners, LLC v Vaak Props., LLC, 93 AD3d 414, 417; cf. Harvard Assoc. v Hayt, Hayt & Landau, 264 AD2d 814, 815).
Thus, had the subject property been sold during the original term of the brokerage agreement, the plaintiffs would be entitled to a commission regardless of whether they were the procuring cause of the sale. The brokerage agreement that gave the plaintiffs the exclusive right to sell the subject property, however, was terminated in June 2017. Although the Survival Clause protected the plaintiffs' right to a commission, under specified conditions, beyond the life of the brokerage agreement, the plaintiffs, in support of their motion for summary judgment, failed to establish that the Survival Clause, as written, also had the effect of preserving their exclusive right to sell the subject property. Accordingly, while the Survival Clause is applicable because the subject property was sold to "customer[s]" who "originated" during the term of the brokerage agreement, the plaintiffs were nonetheless required to demonstrate that they were the procuring cause of that sale in order to establish their entitlement to the commission.
"To establish that a broker was the procuring cause of a transaction, the broker must establish that there was a direct and proximate link, as distinguished from one that is indirect and remote[,] between the bare introduction of the parties to the transaction and the consummation of the sale" (Saunders Ventures, Inc. v Catcove Group, Inc., 209 AD3d at 896 [internal quotation marks omitted]; see Greene v Hellman, 51 NY2d 197, 206; Gluck & Co. Realtors, LLC v Burger King Corp., 164 AD3d 562, 563). "In order to qualify for a commission, a broker need not have been involved in the ensuing negotiations or in the completion of the sale, if such a direct and proximate causal link exists" (Saunders Ventures, Inc. v Catcove Group, Inc., 209 AD3d at 896 [alterations and internal quotation marks omitted]; see Hentze-Dor Real Estate, Inc. v D'Allessio, 40 AD3d 813, 816; Buck v Cimino, 243 AD2d 681, 684; Brown, Harris, Stevens v Rosenberg, 156 AD2d 249, 250).
The record in this case contains evidence showing that the plaintiffs introduced Livanos and Marcus to the subject property and to the defendant's principals, and that the plaintiffs were involved in discussions between the parties to the sale, both before and after the termination of the brokerage agreement. Moreover, the plaintiffs were formally recognized as the brokers for the subject transaction in the letter of intent memorializing the initial offer made by Livanos and Marcus, and were informally recognized as such by Livanos and Marcus during the later negotiations as well (see Zere Real Estate Servs., Inc. v Parr Gen. Contr. Co., Inc., 102 AD3d 770, 773). Yet, the record also demonstrates that, after the initial offer by Livanos and Marcus was rejected, and after the brokerage agreement was terminated, the defendant entertained multiple offers, in varying amounts, including one from another party through a different broker, resumed negotiations with Livanos and Marcus without the plaintiffs' involvement, and did not reach an agreement with them until more than a year had passed since the termination of the brokerage agreement (see e.g. Talk of the Town Realty v Geneve, 109 AD3d 981, 982-983).
Under these circumstances, there is a triable issue of fact as to whether the plaintiffs were the procuring cause of the subject sale (see Saunders Ventures, Inc. v Catcove Group, Inc., 151 AD3d at 994; Talk of the Town Realty v Geneve, 109 AD3d at 982-983; Hentze-Dor Real Estate, Inc. v D'Allessio, 40 AD3d at 816; Dagar Group v Hannaford Bros. Co., 295 AD2d 554, 555; Brown, Harris, Stevens v Rosenberg, 156 AD2d at 250). This factual issue cannot be resolved at the summary judgment stage. Accordingly, that branch of the plaintiffs' motion which was for summary judgment on the first cause of action was properly denied, and that branch of the defendant's cross-motion which was for summary judgment dismissing the first cause of action should have been denied as well.
In light of our determination, the defendant is not at this point "the prevailing party in the litigation" within the meaning of the brokerage agreement. Accordingly, we do not disturb the portion of the order which, in effect, denied that branch of the defendant's cross-motion which was, in effect, for summary judgment on its counterclaim for an award of attorneys' fees.
The plaintiffs' remaining contentions are without merit.
DILLON, J.P., CHRISTOPHER, ZAYAS and WARHIT, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court