Angelic Real Estate, LLC v Aurora Props., LLC (2025 NY Slip Op 04223)

Angelic Real Estate, LLC v Aurora Props., LLC

2025 NY Slip Op 04223

Decided on July 23, 2025

Appellate Division, Second Department

Warhit, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 23, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
BARRY E. WARHIT
LOURDES M. VENTURA
DONNA-MARIE E. GOLIA, JJ.

2022-09528
 (Index No. 612449/20)

[*1]Angelic Real Estate, LLC, appellant,
v
Aurora Properties, LLC, respondent.

APPEAL by the plaintiff, in an action to recover a mortgage brokerage commission, from an order of the Supreme Court (Robert A. McDonald, J.), dated October 11, 2022, and entered in Nassau County. The order denied the plaintiff's motion for summary judgment on the complaint and granted the defendant's cross-motion for summary judgment dismissing the complaint.

Rivkin Radler LLP, Uniondale, NY (E. Christopher Murray and Elizabeth S. Sy of counsel), for appellant.
Hirschel Law Firm, P.C., Valley Stream, NY (Daniel Hirschel of counsel), for respondent.

WARHIT, J.

OPINION & ORDER
This appeal presents the opportunity to examine the law of brokerage agreements granting an "exclusive right to sell," as well as the application of such agreements outside the context of transactions involving the sale or lease of real property. In the present case, the plaintiff broker contends that it had an exclusive agreement to secure certain financing on behalf of the defendant and that it was entitled to a commission even though it was not the procuring cause of a loan the defendant ultimately obtained. For the reasons that follow, we determine that the plaintiff was not entitled to a commission for the transaction at issue and, therefore, we affirm the order appealed from.
Factual and Procedural Background
In June 2020, the defendant, Aurora Properties, LLC, entered into an agreement with the plaintiff, Angelic Real Estate, LLC, a licensed real estate broker specializing in obtaining financing for commercial properties, for the plaintiff to secure certain financing on the defendant's behalf. The two-page letter agreement dated June 8, 2020 (hereinafter the agreement), stated that the defendant was engaging the plaintiff "exclusively" to obtain debt financing for multiple office buildings located in Tennessee. Under the "scope" provision of the agreement, the plaintiff was to "assist [the defendant] in identifying, soliciting proposals from, and negotiating with financing providers for debt for the Properties." The scope provision set forth the terms of the defendant's desired loan and further provided, in relevant part, as follows:
"[I]f under this Agreement [the plaintiff] does not secure, on or before June 20, 2020, one or more written quotes or terms sheets from lenders [with the desired terms], this Agreement shall remain in place but shall become non-exclusive with regards to any lenders not already approached and engaged by [the plaintiff]. In such instance, [the plaintiff] shall provide [the defendant] a list of its protected lenders it has gone to for the Properties . . . by the end of the next business day. Should [the plaintiff] subsequent to that date secure such terms with a lender on the [list], or with another [*2]lender who has not already provided a terms sheet to [the defendant], either directly or via another intermediary, the exclusivity clause of this Agreement shall be reinstated."
The term of the agreement was 120 days from June 8, 2020. Pursuant to the agreement, if the defendant came to an agreement on terms for financing, the plaintiff was to be paid a fee at the closing of each funding pursuant to a specified fee scale. The agreement also contained an "Exclusion" provision, which stated that the above-referenced fee would not apply to a loan with three specified lenders, including Mountain Commerce Bank (hereinafter MCB), "provided a terms sheet is signed with one of them on or before June 30, 2020."
On August 21, 2020, the defendant obtained a $16,750,000 loan commitment from MCB. The plaintiff allegedly informed the defendant that if MCB entered into a terms sheet before the expiration of the agreement and after the exclusion period, i.e., June 30, 2020, the plaintiff would be entitled to a fee under the agreement. The defendant subsequently closed on the loan with MCB and did not tender a fee to the plaintiff.
In November 2020, the plaintiff commenced this action to recover the fee allegedly due under the agreement. The plaintiff subsequently moved for summary judgment on the complaint. The plaintiff contended, inter alia, that the terms of the agreement were clear and unambiguous and granted the plaintiff the exclusive right to secure debt financing on behalf of the defendant. The plaintiff argued that since the agreement was exclusive, it was entitled to a fee as long as the defendant obtained financing during the life of the agreement, regardless of whether the plaintiff was the procuring cause of the financing. The plaintiff further argued that, although there was an exclusion period applicable to MCB outlined in the agreement, that exclusion period expired on June 30, 2020, nearly two months before the defendant entered into a terms sheet with MCB.
The defendant opposed the plaintiff's motion and cross-moved for summary judgment dismissing the complaint. The defendant contended, among other things, that the agreement contained no clear and express language that a fee was owed regardless of the defendant independently negotiating its own terms. The defendant asserted that the plaintiff therefore was not entitled to a fee in connection with the defendant's loan from MCB, as there was no dispute the plaintiff was not the procuring cause of that loan.
In an order dated October 11, 2022, the Supreme Court denied the plaintiff's motion and granted the defendant's cross-motion. The court determined, inter alia, that notwithstanding the fact the agreement's exclusion provision expired on June 30, 2020, given the lack of clear exclusivity in the agreement, the plaintiff was not entitled to receive a fee for a loan negotiated and secured solely by the defendant.
This appeal by the plaintiff ensued.
Legal Analysis
The plaintiff argues on appeal, as it did before the Supreme Court, that it is entitled to a fee in connection with the MCB transaction because the agreement with the defendant was exclusive, and a broker is entitled to a commission under an exclusive agreement if a sales transaction occurs during the life of an agreement, whether or not the broker was the procuring cause of the transaction. The plaintiff further argues that, although there was an exclusion period applicable to MCB, the plaintiff was nevertheless entitled to a fee because the loan commitment was obtained from MCB after the end of the exclusion period and before the expiration of the 120-day term of the agreement, i.e., October 6, 2020.
Generally, "[t]o prevail on a cause of action to recover a commission, the broker must establish (1) that it is duly licensed, (2) that it had a contract, express or implied, with the party to be charged with paying the commission, and (3) that it was the procuring cause of the sale" (All Is. Estates Realty Corp. v Singh, 219 AD3d 1392, 1392 [internal quotation marks omitted]; see Blooming Home Realty, LLC v Infinity Holdings Northeast, LLC, 228 AD3d 815, 816). Thus, a broker seeking to recover a commission is normally required to make a showing that it was the procuring cause of the transaction (see New York Commercial Realty Group, LLC v Beau Pere Real Estate, LLC, 216 AD3d 793, 797 [involving a real estate brokerage agreement]; Saunders Ventures, Inc. v Catcove Group, Inc., 209 AD3d 893, 896 [same]; Multiloan Mtge. Co. v Asian Gardens, 303 AD2d 658, 660 [involving a mortgage brokerage agreement]). However, there is a distinction between brokerage agreements granting an exclusive agency and those conferring an exclusive right to sell, the latter of which permits a broker to recover a commission even if it was not the procuring cause of the transaction (see Morpheus Capital Advisors LLC v UBS AG, 23 NY3d 528, 534-535; [*3]Dominick & Dominick LLC v Deutsche Oel & Gas AG, 2016 WL 11259075, *5, 2016 US Dist LEXIS 189380, *15-16 [SD NY, No. 14-CV-06445 [PKC]), affd sub nom. 756 Fed Appx 58 [2d Cir]).
The case law addressing exclusive right to sell and exclusive agency agreements often arises in the context of real estate brokerage agreements (see Morpheus Capital Advisors LLC v UBS AG, 23 NY3d at 536). In general, pursuant to an exclusive agency agreement, if the owner finds its own buyer, then no commission is due to the broker (see U.S. No. 1 Laffey Real Estate v Hanna, 215 AD2d 552, 553; Solid Waste Inst. v Sanitary Disposal, 120 AD2d 915, 916). In other words, "[w]here a broker has been granted an 'exclusive agency,' the seller cannot 'employ another broker,' but 'would not be precluded from itself making the sale without becoming liable to [the broker] for a commission'" (New York Commercial Realty Group, LLC v Beau Pere Real Estate, LLC, 216 AD3d at 798, quoting Hammond, Kennedy & Co. v Servinational, Inc., 48 AD2d 394, 397). In contrast, if a broker has been granted an exclusive right to sell, the broker would be entitled to a commission even if the owner were solely responsible for the sale (see id.; Solid Waste Inst. v Sanitary Disposal, 120 AD2d at 916; Hammond, Kennedy & Co. v Servinational, Inc., 48 AD2d at 397).
Agreements have been construed as conferring an exclusive right to sell in instances where there was clear and express language providing that a commission was owed regardless of whether the broker was the procuring cause of the transaction (see J.E. Horan Duffy Realty v Brighton, 216 AD2d 358, 359; Barnet v Cannizzaro, 3 AD2d 745, 746), the owner was precluded from independently negotiating a sale (see Hammond, Kennedy & Co. v Servinational, Inc., 48 AD2d at 396-397), or all inquiries or offers were required to be referred to the broker (see Audrey Balog Realty Corp. v East Coast Real Estate Devs., 202 AD2d 529, 530; Gaillard Realty Co., Inc. v Rogers Wire Works, Inc., 215 App Div 326, 331).
For instance, in Audrey Balog Realty Corp. v East Coast Real Estate Devs. (202 AD2d at 530 [internal quotation marks omitted]), it was held that a real estate brokerage agreement granted the plaintiff broker an exclusive right to sell because it required the defendant to "refer all inquiries or offers" on the subject condominium units to the attention of the plaintiff, and specified that commissions payable under the agreement would be due and payable "regardless of whether [the plaintiff] has actually procured the Purchase Agreement." Consequently, the plaintiff was "entitled to commissions on all sales procured prior to the termination of the agreement, regardless of whether or not the [plaintiff] put in any effort at all in procuring the sales" (id.).
Conversely, a listing agreement was found not to confer an exclusive right to sell where, although the heading and preamble stated that the plaintiff was given an "exclusive right to sell," such phrase was undefined in the contract and a provision that a commission was earned "if Consultant delivers a ready, willing and able buyer" was deemed "clearly inconsistent with any entitlement to a commission upon an independent sale by the owner" (Solid Waste Inst. v Sanitary Disposal, 120 AD2d at 916-917 [emphasis and internal quotation marks omitted]; see Cantor Fitzgerald & Co. v ObvioHealth Pte Ltd., 233 AD3d 563, 564; Far Realty Assoc. Inc. v RKO Del. Corp., 34 AD3d 261, 262; Harvard Assoc. v Hayt, Hayt & Landau, 264 AD2d 814, 815).
In Morpheus Capital Advisors LLC v UBS AG (23 NY3d at 535 [alterations and internal quotation marks omitted]), the Court of Appeals held that "a contract giving rise to an exclusive right of sale must clearly and expressly provide that a commission is due upon sale by the owner or exclude the owner from independently negotiating a sale." The Court of Appeals explained that "[r]equiring an affirmative and unequivocal statement to establish a broker's exclusive right to sell is consistent with the general principle that an owner's freedom to dispose of her own property should not be infringed upon by mere implication" (id.). In that case, the plaintiff broker had entered into a financial brokerage agreement with the defendant, which the plaintiff conceded lacked a provision expressly conferring an exclusive right of sale (see id.). The plaintiff argued that, despite the absence of such provision, the court should "examine the contract as a whole to deduce the parties' intent to create an exclusive right to sell or, if the agreement is ambiguous, to examine parol evidence" (id.). The Court of Appeals rejected that approach "in favor of a rule that, '[w]ithout an unequivocal expression of intent by its own terms or by necessary implication from its terms, the . . . contract is at most considered to create an exclusive agency, not excluding the owner's inherent right to sell his or her own property'" (id., quoting 11 NY Jur 2d, Brokers § 169).
The Court of Appeals in Morpheus Capital Advisors LLC v UBS AG also made clear that the rule requiring a clear statement to confer an exclusive right of sale is not limited to real estate [*4]brokerage agreements. In rejecting the plaintiff's argument seeking to apply such a limitation, the Court of Appeals stated that it saw "no reason to apply a different rule to brokerage contracts concerning the sale of financial instruments in the investment banking context," noting that, "[i]n both cases, the governing principles arise from the law of agency and contract, not from the law of real property" (id. at 536).
The same reasoning has been applied in the context of brokerage agreements to secure financing. For example, in Silvergrove Advisors, LLC v Crosswing Holdings LLC (197 AD3d 1057, 1058), the defendant Crosswing Holdings, LLC (hereinafter Crosswing), retained the plaintiff Silvergrove Advisors, LLC (hereinafter Silvergrove), to assist it in obtaining financing. Crosswing obtained an interim bridge loan during the life of the agreement, and Silvergrove contended that it was entitled to a success fee for the bridge loan even though it had not been involved in that transaction (see id.). The Appellate Division, First Department, in pertinent part, upheld the determination denying that branch of Silvergrove's motion which was for summary judgment in connection with recovering that success fee, noting that "the contractual language plainly states that Silvergrove was not given an exclusive right of sale, but was simply made defendants' exclusive broker" (id., citing Morpheus Capital Advisors LLC v UBS AG, 23 NY3d 528).
In contrast, in Matusik v Ward (68 AD3d 1213, 1215), certain defendants had entered into an agreement to obtain financing for a hotel project with a licensed real estate salesperson associated with the plaintiff, which set forth a period of exclusivity during which time the salesperson was entitled to a commission, regardless of whether he or another party procured the financing commitment. Given this language, the Appellate Division, Third Department, held that the plaintiff was entitled to summary judgment on the issue of liability on his cause of action to recover a commission pursuant to that agreement even though the parties disputed the extent to which the salesperson was involved in the negotiation of the loan (see id.).
Applying these principles here, the defendant established its prima facie entitlement to judgment as a matter of law dismissing the complaint. Initially, it is undisputed that the plaintiff did not secure a lender or loan with conforming terms on behalf of the defendant before June 20, 2020. Further, the defendant demonstrated that the plaintiff was not entitled to a commission for the loan the defendant independently obtained from MCB in August 2020. The agreement did not clearly and expressly provide the plaintiff with the exclusive right to deal or negotiate on the defendant's behalf (see Morpheus Capital Advisors LLC v UBS AG, 23 NY3d at 535; Alta Capital Partners Intl. LLC v Parsons Capital LLC, 155 AD3d 493; Miron Props., LLC v Eberli, 126 AD3d 479; Harvard Assoc. v Hayt, Hayt & Landau, 264 AD2d at 815; see also Silvergrove Advisors, LLC v Crosswing Holdings LLC, 197 AD3d at 1058). The defendant also demonstrated that the plaintiff was not the procuring cause of the loan from MCB (see Alta Capital Partners Intl. LLC v Parsons Cap. LLC, 155 AD3d 493, 493; Miron Props., LLC v Eberli, 126 AD3d at 479; Harvard Assoc. v Hayt, Hayt & Landau, 264 AD2d at 815).
In opposition to the defendant's prima facie showing, the plaintiff failed to raise a triable issue of fact. The plaintiff does not contend that the exclusion provision or any other part of the agreement is ambiguous, but rather, that the clear and unambiguous terms of the agreement entitled the plaintiff to a fee if a terms sheet was issued by MCB after June 30, 2020, but prior to the expiration of the 120-day term of the agreement. However, contrary to the plaintiff's contention, nothing in the agreement, either expressly or by necessary implication, obligated the defendant to pay a fee to the plaintiff upon the expiration of the exclusion provision on June 30, 2020 (see Morpheus Capital Advisors LLC v UBS AG, 23 NY3d at 535).
Accordingly, the Supreme Court properly denied the plaintiff's motion for summary judgment on the complaint and granted the defendant's cross-motion for summary judgment dismissing the complaint.
Accordingly, the order is affirmed.
DILLON, J.P., VENTURA and GOLIA, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court